CHARLES E. BALL, Appellee, v. G. R. SKINNER, Appellant.

**Physicians:** NEGLIGENCE: EVIDENCE. Where it was charged that 1 defendant negligently applied to plaintiff's limb a caustic substance which burned the flesh, and that he negligently failed to remove the same when his attention was first called to the pain thereby produced, and the evidence warranted a finding that he was not negligent in the first instance but was in not removing the application, he should have been permitted to state when testifying as an expert whether the caustic had spent its force at the time he was called to relieve the pain.

**Same:** EXAMINATION OF WITNESS. Where a druggist has testified 2 concerning a book formula for compounding a solution it is proper to cross-examine him with respect thereto, but this does not authorize placing the contents of the book before the jury on his redirect examination.

**Physicians:** EVIDENCE NEGATIVING NEGLIGENCE. A physician charged 3 with negligence in using a solution compounded for him by a druggist may show that such druggist was doing a reputable business and holding himself out as a person skilled in his profession; since, if such is the fact, it would not be negligence to use the solution, in the absence of some circumstance which would put the physician on guard.

**Evidence:** REMARKS OF COURT: PREJUDICE. Where a physician 4 charged with negligence in using a certain solution prepared for him by a druggist sought to show that physicians rely generally on druggists for the purity, quality and proper compounding of their drugs and medicines, a remark of the court, in ruling the evidence out, that from his own observation and knowledge of the matter such was not the fact, was prejudicial;

and the error was not cured by subsequently admitting the evidence with a reiteration of the same remark.

Expert. evidence: INSTRUCTIONS. As a general rule expert testimony should be given consideration like all other testimony which the court permits to go to the jury, and should be accorded such weight as, in view of all the evidence of every kind and nature and its reasonableness and the apparent candor and competency of the witness, in fairness it demands.

Same. An instruction which permits the jury to pass upon the materiality of a false assumption of facts embraced in a hypothetical question addressed to an expert; to determine whether a false assumption of a material fact is of such a character as to destroy the value of an expert opinion based thereon; and permitting the jury to accord some weight to an opinion based upon an assumption wholly or partially incorrect, is erroneous.

*Appeal from Linn District Court.*— HON. B. H. MILLER, Judge.

FRIDAY, MAY 17, 1907.

THE opinion states the case.— *Reversed.*

*Henry Rickel* and *P. W. Tourtellot,* for appellant.

*Grimm, Trewin & Moffit,* for appellee.

WEAVER, C. J.— It is the claim of the plaintiff that on April 10, 1900, he suffered an injury to his ankle and employed the defendant, a physician and surgeon for many years at Cedar Rapids, Iowa, to treat it. In the course of such treatment he alleges that the defendant undertook to place a cast upon or about the injured ankle, and in so doing carelessly and negligently made use of a caustic preparation or solution which had the effect to burn and injure the flesh; that later upon the same day, plaintiff experiencing great pain in and about his ankle, he recalled the defendant, who made but a slight examination, and did not remove the cast, but gave the plaintiff an opiate causing him to sleep several hours; and that as a result of this careless and negli-

gent treatment the plaintiff's ankle and foot were so burned
and injured that the flesh fell from the bones and tendons,
crippling and confining him for many months, and causing
him to suffer great pain and to sustain permanent injury to
his limb, for all of which he seeks to recover damages.  The
defendant answers in denial.  There was a verdict and judg-
ment for plaintiff in the sum of $2,500, and defendant ap-
peals.

The evidence, which in most respects is without serious
dispute, tends to establish the following facts:   The de-
fendant, who is an experienced physician and surgeon, was
called upon at his office by the plaintiff, who complained of
some injury to his ankle, and desired, if possible, to have it
treated in such manner as to permit him to go out upon the
street and attend to his business.   Defendant told him he
could incase the ankle in a tight cast which would not pre-
vent his moving about upon crutches.   It appears that for
the making of such casts or fixed bandages surgeons some-
times employ a solution of silicate of soda, a preparation
commonly known as " liquid glass " or " soluble glass."   A
plain cloth bandage is first wrapped about the injured mem-
ber, and over this bandage is placed several thicknesses of
other cloths or bandages soaked in the solution, which soon
harden into a cast which holds the joint quite rigidly in the
desired position.   Surgeons do not ordinarily manufacture
this solution, or keep it in stock, but rely upon druggists or
chemists to furnish it upon call.   The defendant, having de-
cided to use a cast of this kind, telephoned to the place of
business of one Whelihan, a pharmacist doing business in
the city and of whom he was in the habit of purchasing such
materials, to send him a quantity of the solution.   Whelihan
replied that he had none on hand, but could make some, and
was told to proceed to do so.   The solution is a mixture or
compound of soda and silica and water, and when these ele-
ments are used in the proper proportion the compound so
made may be applied to the skin of a person without injuri-

ous results; but, some of these elements being of a caustic nature, if they are not compounded in the right proportions to neutralize such quality, its application to the skin or flesh is liable to produce serious injury. Whelihan, with his assistant, proceeded to prepare the solution, and when completed sent it to the office of the defendant, who thereupon made use of it in bandaging and fixing the plaintiff's injured ankle. This treatment was concluded about one or two o'clock in the afternoon, after which plaintiff returned home. About six o'clock in the evening plaintiff sent for the defendant, who responded to the call, and, upon complaint of the plaintiff that his foot was paining him, defendant cut the bandage part way down from the top. Upon this being done, plaintiff seemed to be relieved, and defendant left him for the night. On the following morning, the defendant repeated his visit and removed the cast and bandages from the injured limb. It was then revealed that the flesh upon the defendant's foot and ankle had been severely burned and injured, as if by a caustic application. Immediately thereon defendant applied remedies to arrest the injurious results of the application, and continued to attend the plaintiff thereafter for several months, till he was substantially recovered. It is not denied that the injury is one of considerable severity, or that the plaintiff suffered pain and loss of time therefrom, and the question to be settled in this litigation is whether, conceding such injury, the same is properly chargeable to negligence on part of the defendant. It is the claim of the appellant that in the trial of this question in the court below there were several errors entitling him to a reversal of the judgment rendered against him, and to a new trial.

I.   Several exceptions are urged to rulings of the trial court upon the introduction of evidence. We cannot take time to consider all these objections in detail, but will refer to the following as presenting questions of materiality and merit: The defendant, being a witness in his own behalf,

and testifying also as an expert surgeon, was speaking with

**1. PHYSICIANS: negligence: evidence.**

relation to his visit to the plaintiff on the evening after the cast had been placed on the ankle, and was asked the following question: " Q. Assuming that this preparation is as caustic as it has been shown to be by its effect upon this man's ankle, I will ask you whether or not the caustic had expended its force and done its damage by the time you got there and cut that down?" Answer to this question was ruled out on objection of the plaintiff as being incompetent, irrelevant, and immaterial. We think the answer should have been allowed. It will be observed, by reference to the appellee's claim, that he charges negligence in two respects: First, in the application of the solution to the plaintiff's ankle; and, second, in failing to discover the difficulty and remove the bandage at the time of the defendant's visit on the evening after the first treatment. Now, if the jury should find, as it well might find under the testimony, that the defendant was not chargeable with negligence in the first treatment, but was negligent in failing to see the character of the application and remove the bandage upon his visit to the plaintiff in the evening, it would be very material to ascertain whether the damage or injury of which complaint is made had already taken place before the defendant's said visit. The question asked by counsel was fairly well calculated to elicit relevant testimony on this point, and it was an error to exclude it.

The druggist Whelihan, testifying for the plaintiff, stated that he compounded the solution according to a formula found in the United States Dispensatory. On cross-

**2. SAME: examination of witnesses.**

examination a colloquy arose between witness and counsel over the fact and witness was asked to look at the book and see if the assumption of counsel was not right. On redirect examination plaintiff's counsel was permitted to read an extended extract from the book, not the formula in question, and ask the witness if he did not find it there. Objection to this

question was overruled, and the witness answered in the affirmative. The objection should have been sustained. The witness having first testified concerning the book formula, it was proper to cross-examine him thereon; but such cross-examination did not open the door to plaintiff to place other contents of the book before the jury in support of his case.

The defendant, as a witness in his own behalf, was asked if he knew whether the druggist Whelihan at the time in question was holding himself out and advertising himself as a manufacturing chemist, and upon objection of the plaintiff, the answer was ruled out. We think the evidence sought by this inquiry was very material. If Whelihan was doing business as a reputable druggist or chemist and holding himself out to the world as a person skilled in such work, then under ordinary circumstances, the defendant would be justified in depending upon his reliability and competency and accepting the solution purchased of him as being what it purported to be; and, in the absence of any circumstance which should have put him on his guard, he would not be chargeable with negligence in using such solution upon the plaintiff's ankle. The matter inquired about had a direct bearing upon the first ground of negligence alleged by the plaintiff and should have been admitted.

3. PHYSICIANS: evidence negativing negligence.

II. Complaint is made of certain remarks by the court pending the trial and in the presence of the jury as having a clear tendency to disparage evidence offered by the defendant and to prejudice his defense in the minds of the jury. For instance, objection having been made by plaintiff to certain matter offered in evidence by defendant, the court ruled upon it in the following words: " I don't see where this testimony can do any harm." Again, defendant being asked whether physicians generally rely on the druggist for the purity, quality, and proper compounding of their drugs and medicines, and

4. EVIDENCE: remarks of court: prejudice.

objection being made thereto, the court said: "Taking my
own observation and knowledge of that matter, I think that
most all surgeons and physicians in this country don't, as a
rule, rely on ordinary druggists. All physicians that I·am
acquainted with buy their own remedies, and don't rely on
the druggist." And, again, another Cedar Rapids phy-
sician, testifying for the defendant was asked substantially
the same question, and again, an objection being made, the
court interposed as follows: "Do they depend on the drug-
gist? Most of them have their own drugs in our county."
Having with this remark sustained the objection, the court
thereafter seems to have changed its ruling with the fol-
lowing explanation: "Now, it is proper to show the custom
of physicians in Cedar Rapids and vicinity in ordering
drugs of a registered pharmacist to rely upon their purity.
As I said to you the other day, they might rely upon the
skill and all that of the pharmacist. They might rely on
that, and would perhaps. I didn't mean to offend the de-
fense when I said that most of our physicians had their own
drugs, but the fact is, and the fact remains, that you can't
go scarcely to a physician's office I am acquainted with in
Cedar Rapids, or any place else, but what you find a phar-
macy there. That is the matter I spoke about, and not in
any way to influence this jury one way or the other."

Concerning the first incident above mentioned, it may
be that the court's remark to the effect that certain evidence
admitted could do no harm was not a happy one, yet we do
not think it involves reversible error. The objections raised
to the other remarks of the court in the presence of the jury
are of a much more material character. It will be observed
that, in the first instance, when it was sought to show that,
in ordinary practice of medicine and surgery, it was the gen-
eral custom or practice of physicians and surgeons to rely
upon druggists for the compounding and preparation of
remedies and applications employed or prescribed by them,
the judge not only ruled out evidence of the alleged fact on

part of the defendant, but proceeded himself to negative the truth of such contention by stating his own observation and knowledge to the contrary. This ruling and remark, as we understand the record, was never changed or withdrawn.

Later in the course of the trial, when another witness was on the stand, and the same kind of testimony was offered, it was met with a repetition of the same ruling and substantially the same statement by the court. At this time, however, the court seems finally to have concluded to admit the offered evidence, but, while disavowing any intention to offend any of the parties or to improperly influence the jury, proceeded to reassert the truth of his former remarks by the declaration that " the fact remains " that of his personal knowledge the physicians of Cedar Rapids and elsewhere maintain their own pharmacies. In other words, while changing the ruling and admitting the evidence, its value was effectually neutralized by a statement from the bench which, in substance, denied its truth. It is not to be understood from this language that the learned trial judge intended to put the appellant at a disadvantage before the jury; but we are fully persuaded that such must have been the effect of his remarks, and the exceptions taken thereto must be sustained.

III. Both parties introduced and examined expert witnesses on various phases of the controversy and from the very nature of the case the evidence in support of the defense was very largely of that character. To govern the jury in the consideration of expert testimony the court gave the following instructions:

5. EXPERT EVI-DENCE: instructions.

Instruction 11. You are not to substitute for your own conclusions, upon the evidence in the case, the opinions of expert witnesses; but it is your duty to determine the issues involved from all the evidence introduced in the case.

Instruction 12. You will carefully consider the expert testimony which has been adduced in the case, and give it the weight you think it justly entitled to, taking into considera-

tion whether or not the hypothetical questions propounded to the experts are based upon facts established in the case. Such expert evidence should not overthrow positive and direct evidence of creditable witnesses who testified from personal knowledge. You are not bound by the opinions of the experts, but should determine the questions involved in the case from all the evidence, including the evidence of the expert witnesses.

Instruction 13. You are not to take for granted that the statements contained in the hypothetical questions which have been propounded to the witnesses are true. Upon the contrary, you are to carefully scrutinize the evidence, and from that determine what, if any, of the statements contained in the hypothetical questions, are true, and what, if any, are not true. Should you find from the evidence that some of the material statements contained in such hypothetical questions are not correct, and are not borne out by the evidence, and they are of such a character as to entirely destroy the reliability of opinions based upon the supposed state of facts contained in such questions, you may attach no weight whatever to the opinions based thereon. You are to determine from all the evidence what the real facts are, and whether they are correctly or not stated in the hypothetical question or questions. An opinion based upon a supposed state of facts wholly incorrectly assumed, or incorrect in its material facts, to such an extent as to impair the value of the opinion, is of little or no weight.

Error is assigned upon the giving of these instructions. When read as an experienced lawyer would read it, there is little for the appellant to complain of in the eleventh paragraph. The only criticism which may justly be passed upon it is that the rule of law is stated so briefly and baldly that the average juror may not recognize the implied restrictions and limitations which a lawyer would discover in the terms employed. It is true that the verdict when reached is to reflect the final opinion and conclusion of the jury upon the whole case, and jurors are not to substitute the opinions of witnesses for their own, yet in stating this rule care should be observed to avoid giving them the impression that

they can properly reject evidence simply because it is expert in character, and register their own conclusions without giving it any consideration. In other words, they should be made to clearly understand that their verdict is not to be founded upon their private personal views of the subject abstractly considered, but upon the conclusion to which their minds are brought after a fair consideration of all the evidence, both expert and nonexpert.

In the twelfth paragraph, the statement that the jury should " not allow expert evidence to overthrow positive and direct evidence of creditable witnesses, testifying from personal knowledge," we think cannot be approved. The rule as stated in the instruction is evidently quoted or adopted from expressions made use of by this court in *Borland v. Walrath,* 33 Iowa, 130, and *Whitaker v. Parker,* 42 Iowa, 585. It will be noticed, however, on examination of these cases, that in each of them the question at issue was the genuineness of certain written signatures, and we think it is a fairly well established proposition that, upon the matter of disputed handwriting, expert evidence is subject to special limitations and is accorded less consideration when opposed to the positive evidence of credible witnesses speaking from personal knowledge than is given to evidence of expert witnesses in general. This distinction was recognized by us in *State v. Townsend,* 66 Iowa, 741. In that case expert medical witnesses had testified upon the question of the defendant's soundness of mind, and the trial court instructed the jury thereon in the language employed by this court in the *Borland* case and the *Whitaker* case above cited. We held the instructions erroneous, saying: " In view of the peculiar character of the case, we do not think the medical evidence should be regarded as the lowest order of evidence as the court held. There are cases undoubtedly, in which this might be said of expert evidence. Take a case involving the genuineness of a signature. Expert evidence would be of a low grade as compared with the testimony of credible wit-

nesses who testify to having seen the signature written. There are many cases of a similar kind; but there are other cases, and the case before us is one of them, which we do not think call for a disparagement of expert evidence. There were questions touching the matter of epilepsy which could be answered properly only by an expert witness, and the fact of epilepsy, if established, had such an important bearing upon the question as to the defendant's mental condition, at the time of the homicide, we think that the attempt to grade the evidence was calculated to mislead the jury." See, also, *Brush v. Smith,* 111 Iowa, 220.

Some of the most important questions in the instant case were of a character that only an expert witness could speak with any degree of clearness or certainty, and, as is suggested in the *Townsend* case, we think the parties were entitled to have the same go to the jury without the handicap placed upon it by the instruction to which we have referred. If the instruction had said no more than that the jury was not necessarily bound by opinion evidence as against positive evidence of credible witnesses where the two kinds of evidence were in conflict, no just exception could be taken to it; but the direction of the court was not so limited, and the jury were told in substance, that, where such a conflict arises, the proposition supported by the experts must fail. A little reflection will make it plain, we think, that this ought not to be the rule, and we think the authorities do not sustain it. For instance, in a given case, a witness of unimpeachable character for veracity and candor may testify to an alleged fact or state of facts as having occurred under his personal observation, while against this testimony there may be an unbroken array of scientists, students, and experts of the most eminent rank testifying that such an occurrence is impossible. Now, it is perfectly competent for the jury to believe and find the fact to be with the nonexpert witness, as against the united opinion of the experts; but, on the other hand, if the jury believes that, notwithstanding the

high character and good faith of the nonexpert, he has been misled in the matter by some mistake in observation or by some deceit practiced upon him of which he has no suspicion, there ought to be, and in our judgment there is, no rule of law which prevents the return of a verdict according to such finding. As bearing upon this proposition, see *Carter v. Baker*, Fed. Cas. No. 2472; *Humphries v. Johnson*, 20 Ind. 190; *Cuneo v. Bessoni*, 63 Ind. 524; *Leitch v. Ins. Co.*, 66 N. Y. 100; *Watson v. Anderson*, 13 Ala. 202; *Stevens v. City*, 42 Minn. 136 (43 N. W. 842); *Louisville, etc., R. R. Co. v. Whitehead*, 71 Miss. 451 (15 South. 890, 42 Am. St. Rep. 472); *Thompson v. Ish*, 99 Mo. 160 (12 S. W. 510, 17 Am. St. Rep. 552); *R. R. Co. v. Thul*, 32 Kan. 255 (4 Pac. 352, 49 Am. Rep. 484; *Kennedy v. Upshaw*, 66 Tex. 442 (1 S. W. 308); *Chandler v. Thompson* (C. C.) 30 Fed. 38; *Sanders v. State*, 94 Ind. 147; *Bever v. Spangler*, 93 Iowa, 576; *Watson v. Watson*, 58 Mich. 507 (25 N. W. 497); *State v. Miller*, 9 Del. 564 (32 Atl. 137); *Eggers v. Eggers*, 57 Ind. 461; *Ryder v. State*, 100 Ga. 528 (28 S. E. 246, 38 L. R. A. 721, 62 Am. St. Rep. 334). A study of the precedents will develop some confusion in the statement of rules governing the weight and effect to be given to expert testimony; but the reasonable rule, applicable at least to the great majority of cases, would seem to be that expert testimony is to be given consideration like all other testimony which the court allows to go to the jury, and accorded such weight as, in view of all the evidence of every kind and nature and its reasonableness and the apparent candor and competency of the witnesses, in fairness demand. See, note, to *Hull v. St. Louis*, 138 Mo. 618 (42 L. R. A. 753, 40 S. W. 89). All this is but another way of stating the elementary doctrine that the jury is to give the evidence, and all of it, full and fair consideration, and therefrom draw the conclusion which the judgments and consciences of the jurors approve as just and right.

Of the thirteenth paragraph we have also to say that it

is erroneous under the rule applied in *Kirsher v. Kirsher,* 120 Iowa, 342; *Stutsman v. Sharpless,* 125 Iowa, 341, and *Hall v. Rankin,* 87 Iowa, 264. In the first place, after informing the jury correctly that the value of an expert answer to a hypothetical question depends upon whether the facts assumed in the question have been proved to be true, the instruction proceeds to tell the jury that they *may* attach no weight whatever to the witness' opinion, if they find that any of the " *material* statements " embodied in the question are not correct and such erroneous statements are of a character " to utterly destroy the reliability of opinions based upon the supposed state of facts contained in such questions." Again, in concluding the paragraph, the jury is told that an opinion based upon a state of facts " wholly incorrectly assumed," or " incorrect in its material facts, to such an extent as to impair the value of the opinion, is of *little or no weight.*" This clearly allows the jury (1) to pass upon the materiality of a false assumption of facts in a hypothetical question to an expert, (2) to determine whether a false assumption of a material fact is of such a character as to impair or destroy the value of the expert opinion based upon it, and (3) to accord *some* weight to an opinion based upon an assumption which is wholly or partially incorrect in its recitals of facts. Without taking time to discuss these propositions, we will say that the materiality of the facts is a matter for the court alone, and the jury is bound to assume that any fact or circumstances allowed in evidence by the trial court is material and entitled to consideration. Again, a hypothetical question embracing a series of assumed facts is one complete structure, and the court and jury are required to assume that every component part or element therein is considered by the expert in reaching the opinion which he gives in answer thereto. It is not for the court or jury to say that any one of the assumed facts was disregarded or ignored by the witness in forming his opinion, and therefore, if in deliberating upon

6. SAME.

its verdict the jury finds that one or more of the assumptions indulged in by counsel in framing the question have not been established, the testimony based thereon should be wholly discarded; it has not even " little weight."

IV.    As the case must be reversed on other grounds, and as upon a new trial other and different testimony may be developed, we refrain from any discussion of the sufficiency of the evidence to sustain a verdict for the plaintiff.

Many other questions have been argued by counsel, but the conclusions we have already announced render the discussion of most of them unnecessary.    Other objections urged will doubtless be avoided on a new trial.

For the reasons stated, the judgment of the district court is *reversed*.