Mrs. MARIE WILCOX, Appellee, v. DR. R. C. CRUMPTON, Appellant.

No. 41947.

390

FEBRUARY 5, 1935.

Burnstedt & Hemingway and Dutcher, Walker & Ries, for appellant.

F. J. Lund, for appellee.

PARSONS, J.—The plaintiff in her petition claimed that on the 15th day of June, 1930, she was injured and suffered a dislocation of the ankle joint in her left foot, and a fracture of the ends of the fibula and tibia, near the ankle, and that she employed and retained the defendant to treat and reduce the fracture, which treatment he continued until about the first of November, 1930, and she alleges that he was careless, negligent, and unskillful in the different particulars set out.

The facts in the case show that the plaintiff, appellee, was a resident of Webster City, Iowa, twenty-nine years of age, married, and a stenographer in a law office at $25 per week. That she had known the defendant a number of years, and that on June 15, 1930, about 8:30 or 9 o'clock p. m., her ankle was broken, and both ends of the two long bones broken off, and there was a dislocation there. That she was taken to the defendant's office; he said he could reduce the fracture; he took an X-ray picture, Exhibit 1, and gave her a general anaesthetic. That when she came out of the operation the doctor was finishing wrapping a bandage about the splint on her foot. That it was a long steel splint, sort of perforated in the back.

That in the latter part of September she went to the defendant and asked him if there wasn't some place she could go to have her leg straightened, and he said he would give her a letter to Dr. Steindler of Iowa City; that he would not advise her to go because her foot would be bigger and more crooked than ever. She afterwards went to Dr. Slocum, a chiropractor practicing in the same town. He took an X-ray, Exhibit 3. He said he did not know the kind of fracture it was from the X-ray; that he had never treated a fracture of the type in Exhibit 1, and had never had any experience in reducing and treating fractures in the human body.

The plaintiff stated that when she went to Dr. Crumpton he reduced the fracture and took an X-ray afterwards, Exhibit 2. Dr. Crumpton testified that this showed the reduction was satisfactory, and that if it had not been it would have been necessary to reduce it again. That would have required further anaesthesia and further correction. The plaintiff claimed the defendant in attempting to reduce the fracture failed to unite the bones and put them in proper position.

On May 19, 1931, the plaintiff went to see Dr. Steindler of Iowa City, but did not have any operation performed. On May 20, 1931, she went to Rochester, Minnesota, and was operated on May 23d, and had a number of X-rays taken. She was treated by what is known as the open method, and not the closed method. It is the claim that the results of the operation by Dr. Crumpton were unsatisfactory to her; that is, the results obtained were not beneficial.

The defendant in this case was a witness for himself. He was a physician practicing in Webster City. In his examination in chief he testified he had received his training at Rush Medical College and had served his internship there, was a graduate of the

University of Chicago, and showed a long line of experience; that he had been practicing at Webster City since 1915, except during the war when he was a ward surgeon in the medical corps of the army, and had experience there in hospitals treating all sorts of fractures and matters of that kind; that after the war he returned to Webster City and had been practicing there ever since. On direct examination, he was asked by the defendant's own counsel the following question: "I will ask you whether or not the usual and ordinary practice among physicians and surgeons in Webster City at that time, and in similar communities, would have required the doing of anything in relation to the fracture at that time?" The plaintiff objected to the question as immaterial, incompetent, and irrelevant, and the witness not qualified, and the proper foundation for that testimony at that time, under the record, had not been made. The objection was sustained, and the defendant excepted. Dr. Crumpton was then asked: "Well, what was the usual and ordinary practice of physicians and surgeons in Webster City and similar communities, at that time, in the conditions you found in that limb on June 24th, 1930?" The same objection was made and the same ruling. The defendant had testified as to the condition of the plaintiff's limb when she came to his office, and the first of these questions referred to that, and the second question was to show what was the usual and ordinary practice of physicians and surgeons in Webster City and similar communities at that time.

These questions were certainly proper. No possible objection could exist against such testimony as was called for by them, but the objection was sustained, and in our opinion this was error. We are at a loss to see how the objection could be sustained. If Dr. Crumpton was not competent to testify at this time, so far as his qualifications were concerned, there would be few physicians qualified to give testimony—none but a practicing physician could testify. It certainly was material to show what was the usual and ordinary practice in such cases in Webster City and similar communities at that time, and also proper to show whether or not he was required to do anything in relation to the fracture at the time inquired about. His testimony was admissible—of course its weight was for the jury.

In Whitesell v. Hill, 101 Iowa 629, at page 636, 70 N. W. 750, 37 L. R. A. 830, in criticizing an instruction given by the lower court, the court said as to the rule governing a physician:

"He was bound to possess that skill only which physicians and surgeons of ordinary ability and skill, practicing in similar localities, with opportunities for no larger experience, ordinarily possess."

In Ferrell v. Ellis, 129 Iowa 614, 105 N. W. 993, where the lower court had charged the jury that:

"The standard of skill and learning required in any case is that reasonable degree of skill and learning ordinarily exercised by the members of the profession at the time of the treatment in question, having regard to the advanced state of the profession at the time," this court said: "This was erroneous in not limiting the degree of skill and learning to that ordinarily possessed by physicians and surgeons practicing in similar localities."

These authorities show that the physician is bound to exercise only that degree of skill which is found in that community and in similar localities. Any other physician or surgeon in Webster City, or similar locality, could have testified in answer to this question as to what was considered to be the usual and ordinary practice of physicians and surgeons in Webster City and similar communities, at the time and in the face of conditions stated. The witness Dr. Crumpton was entitled under this rule to answer. It makes no difference that he was a physician, whose conduct was under investigation.

In Osnes v. Scanlon, 189 Iowa 1364, 179 N. W. 869, the physician on the witness stand was asked to state whether or not "you gave him your best judgment." This was objected to and the objection sustained. The court said:

"The nub of it is that the jury did not have the evidence before it which appellee concedes they were entitled to. The mere fact that the question indicates that defendant would have answered 'yes' to the question does not cure the error. A question is not evidence. The fact that the court sustained the objection, said to the jury, in effect, that the question should not be considered. We cannot assent to the proposition that the exclusion of the evidence was non-prejudicial."

If a physician could testify as indicated in this question, he could reasonably testify as to what the usual and ordinary practice in localities like Webster City was at the time, and sustaining of this objection was error and prejudicial.

394

■ Error No. 4 complained of concerns the cross-examination of the defendant Dr. Crumpton. The doctor on examination in chief had not testified as to the examination of or that he relied upon medical books in general or upon any particular book. On cross-examination he had been asked if he had consulted Dr. Studder's work, put out by Roberts and Kelley. On cross-examination the attorney for plaintiff asked, "Doctor, how many of those books advised the method of putting weight—of weight bearing within six weeks in the case of a fracture like the one we have here?" This was objected to as immaterial, incompetent, and not the best of evidence; the contents of the book not admissible; the books not admissible because they are hearsay. The court overruled the objection, and the doctor was permitted to answer. We cannot see the materiality of such cross-examination, and the objection should have been sustained. It is not competent on cross-examination for a physician testifying as an expert to go into the contents of medical books where he has not referred to any book or given that as an authority, or one upon which he relied, for the reason that even the books themselves are not admissible, and in this case for the further reason that the witness is asked to give a summary of what the books teach on a particular subject. This is secondary evidence. If the books are not admissible, then the summary is not. The same may be said as to errors 5, 6, 7, 8, 9, and 11, which will be unnecessary to set out here because they all come under the same rule.

In Etzkorn v. City of Oelwein, 142 Iowa 107, 120 N. W. 636, 19 Ann. Cas. 999, the plaintiff's counsel read a long extract from a medical work, and asked if the witness had ever read it. This was objected to by the defendant's counsel and objection sustained. The court says:

"The objectionable matter had been read to the jury, however, and could not well be eliminated by a ruling sustaining an objection to the question. That it is error to admit medical works," citing Bixby v. Railway & Bridge Co., 105 Iowa 293, 75 N. W. 182, 43 L. R. A. 533, 67 Am. St. Rep. 299; State v. Peterson, 110 Iowa 647, 82 N. W. 329.

In Bixby v. Railway & Bridge Co., 105 Iowa 293, at page 296, 75 N. W. 182, 43 L. R. A. 533, 67 Am. St. Rep. 299, this court said:

"Authorities are agreed that the truths of the exact sciences, the established facts of history, and computations from fixed data may be proven by the works of reputable authors", citing authorities to that effect. It then went on to say: "This is on the ground that all men assent to their correctness. But medicine belongs to the class known as inductive sciences. The data is constantly shifting with new discoveries, and the conclusion which may be considered sound to-day is repudiated to-morrow. A medical work may be standard this year and obsolete next. The opinion of the same author changes in the different editions, owing to new discoveries and a better understanding of symptoms. The very best works, aside from observations, are largely made up of the opinions either of the author or of others compiled. It is a well-known fact that physicians after research and investigation often differ radically."

The court winds up its opinion by holding that the weight of authority as well as of reason is against the reception of such works.

In Hall v. Murdock, 114 Mich. 233, 72 N. W. 150, the court lays down the rule that the only circumstances under which medical books can be read in evidence is when the witness has based his opinion on them and has referred to them as an authority, and the court says this rule cannot be evaded on cross-examination.

Again, the same court, in DeHaan v. Winter, 262 Mich. 192, 247 N. W. 151, says:

"The reason for the ruling is that the attempt is to discredit the testimony of the witness by 'hearsay testimony of the written or spoken opinions of other persons, whom the jury have no means of examining as to their learning, their honesty, or their sources of special knowledge' * * *, which attempt can be justified on neither principle nor difficulty of cross-examination."

The foregoing applies also to the other assignments of error mentioned, up to and including No. 9, as the examination of the errors in each of these cases was similar and the same rule should apply.

In the error assigned as No. 10, the witness for plaintiff Dr. Bowen testified on cross-examination that he had had to perform a hundred cases of Pott's fracture previous to this case. The question was then asked him on cross-examination: "In how many of those did you fail to get reasonably good results?" This was ob-

jected to as incompetent, immaterial, and irrelevant, and the court overruled the objection. After some rather inconclusive answers the question was propounded: "Well, have you had any case where the reduction and operation—the reduction of the fracture or operation has not been reasonably satisfactory?" This was objected to as immaterial and irrelevant. The objection was overruled. This evidence was certainly immaterial. What the witness had had, what his experiences had been as to results in other cases, was no criterion in this case. It was certainly immaterial in this case whether in other cases the witness had had good or bad results, as he is not liable for results but for negligence. The evidence shows that the sort of injury under consideration in this case is quite liable, with the best of treatment, to have unsatisfactory results, and it had no bearing upon the question of negligence or lack of skill of the defendant.

In error No. 15, the plaintiff was called on rebuttal and testified that she had shown to Dr. Bowen the X-ray plates, Exhibits 1 and 2, in his office at Fort Dodge. She was then asked this question in chief by her counsel: "Upon his examination of Exhibit 2, what remark did he make about it?" This was objected to as irrelevant, incompetent, and immaterial, which the court overruled. She answered: "He looked at the plate and said that a Pott's fracture, which he had called it before, was supposed to be placed for reduction—should be placed this way, and indicated with his foot how a Pott's fracture should have been reduced." The defendant moved to strike the answer and then the plaintiff's attorney asked: "What did he say of the fracture, the reduction, as shown by the plate?" The same objection for the reasons urged in the motion, but the court overruled, and then the plaintiff replied: "He said it was pretty near right." This is certainly immaterial testimony. Dr. Bowen was not a party to this suit; he was not a defendant; he in no way represented the defendant; and any conversation between the plaintiff and Dr. Bowen would certainly be hearsay, and the objections on that ground should be sustained.

Error No. 16 deals with instructions requested by the defendant-appellant, amongst them being instruction No. 2, which read as follows:

"Expert witnesses have been examined in this case on hypothetical questions, that is, upon questions which assume facts to be true, for the purpose of eliciting the answers of the expert thereto.

You are instructed that in considering answers to hypothetical questions you must determine if all of the facts assumed in the hypothetical question are established by the evidence, and if they are, you may give the answer of the witness to such questions such weight as you may deem it entitled to, but if you find that any fact assumed in any hypothetical question has not been established by the evidence, then you will give no weight or consideration to the answer of the expert to such question."

This instruction was refused by the court, and no equivalent instruction was given. The instruction asked has support in Stutsman v. Sharpless, 125 Iowa 335, 101 N. W. 105, where the court discussed an instruction given, saying:

"It will not do to allow juries to say what facts were material in securing the opinion of the medical expert, and to what extent a variance in the facts would have changed his opinion. The only safe rule is to reject the opinion unless the facts hypothetically stated are established by the evidence."

Certainly the jury should be given some rule by which to determine the weight to be given to expert opinion testimony. If the facts stated in the question are not correct or true, it destroys the value of the answer, at least to some extent. Repeatedly the court has held that it is improper to allow the jury to determine the materiality of certain assumed facts incorporated in the hypothetical question, and that the true rule is that this materiality is determined by the court in its admissions, but its weight and credibility is to be determined by the jury. Blakely v. Cabelka, 203 Iowa 5, at page 11, 212 N. W. 348, citing: Kirsher v. Kirsher, 120 Iowa 337, 94 N. W. 846; Stutsman v. Sharpless, 125 Iowa 335, 101 N. W. 105; Ball v. Skinner, 134 Iowa 298, 111 N. W. 1022. Under these decisions the instruction II asked for by the defendant should either have been given, or some equivalent thereof given in the instructions of the court.

It is claimed that the only instruction given by the court, No. XIV, covered this. But it does not. The instruction nowhere undertakes to cover the idea aimed at in instruction No. II asked by the defendant. The only part of instruction No. XIV which in any way covers the way a jury should view expert testimony is:

"That the fact that witnesses are called experts and give opinions upon a particular point does not necessarily obligate the jury

to accept their opinions and to be bound thereby, but the value of such testimony depends upon the circumstances in each case, and the skill and knowledge of the witnesses, and of those matters the jury may be the judges. When expert witnesses testify to matters from personal knowledge, then their testimony as to such facts should be considered the same as that of any other witness who testifies from personal knowledge."

Where a hypothetical question is asked, the jury cannot say whether any part is material or immaterial. It has no guide in the instruction No. XIV by which it is to weigh the testimony. It cannot tell what part of the hypothetical question was relied upon or was taken into consideration by the expert so testifying; hence, if the testimony is upon hypothetical questions, then the instruction asked was proper and should have been given, and failure to do so was error.

A hypothetical question may be framed including facts proven, or including evidence which tends to support certain facts, but the hypothetical question as a whole, when framed, is the question the witness answers. If the hypothetical question is so framed as to include claimed facts which have no evidence whatever to support them in the record, the framer of that question takes his chances, and if he includes matters there which have no support whatever in the record, even contrary to the facts in the record, he cannot complain of an instruction such as was asked and refused in this case, for can then the court tell what the witness took into account when answering the question? That is to say what the witness included and intended to answer in his question.

As the case must be reversed on other grounds, and as upon a new trial other and different testimony may be developed, we refrain from any discussion of the sufficiency of the evidence, to sustain a verdict for the plaintiff. Many other questions have been argued by counsel, but the conclusions we have already announced render the discussion of most of them unnecessary. Other objections urged will doubtless be avoided on a new trial.

For the reasons stated, the judgment of the district court is reversed.—Reversed and remanded.

ANDERSON, C. J., and ALBERT, DONEGAN, and RICHARDS, JJ., concur.