T. J. CODY, Appellee, v. TOLLER DRUG COMPANY, Appellant.

No. 46116.

OCTOBER 20, 1942.

Stilwill, Brackney & Stilwill, of Sioux City, for appellant.

Robert B. Pike, of Sioux City, for appellee.

GARFIELD, J.—On June 25, 1939, appellee, then a railroad yardmaster, consulted Dr. Sibley, who gave him a written prescription for a tonic in capsule form to be taken internally four times a day. Appellee took the prescription to appellant's drug store to be filled. He claims appellant negligently included in the capsules "atropine, a poisonous and injurious drug not called for in said prescription." Appellant maintains the prescription was correctly filled. Upon this appeal, appellant's principal contention is that the evidence is insufficient to show the capsules contained atropine.

Appellee took a capsule after the noon meal and another in the evening on the 25th. His wife then noticed that his eyes were dilated. He also took a capsule the next morning and another at noon. When eating his noon meal on the 26th, appellee choked on a piece of meat and had to leave the table. He could not swallow. He could not see. That afternoon he was unable to read the numbers on freight cars and could not distinguish people. He began to stagger; his throat was dry and he could hardly talk.

Becoming alarmed, appellee consulted Dr. Sibley in the afternoon of the 26th and told him he thought something was wrong with the medicine. Dr. Sibley looked appellee over, and his son, also a physician, examined him. Dr. Sibley phoned appellant's store and asked a clerk to read the prescription to him to make sure there had been no mistake in writing it. The doctor then told appellee not to take more of the capsules and

gave him a prescription of bromides to settle his nerves. Dr. Sibley also saw appellee on the 27th, when he called in Dr. Tripp, an eye-and-ear specialist, to observe appellee. Dr. Sibley testified that the symptoms he found all pointed to atropine and that the drugs which had been prescribed could not have caused appellee's condition; that he had used this prescription for twenty years and it had also been used by a former partner.

Dr. Edward Sibley, the son, testified that appellee "certainly seemed to have an acute case of poisoning from something and at that time the only thing I could think of that could give such a picture clinically was atropine, or something very closely related to it." He also said there was no probability that the prescribed drugs would produce the condition in which appellee was found.

Dr. Tripp, who examined appellee's eyes on the 27th, testified he was familiar with the effect of atropine on the eyes and that appellee's eyes looked as if they had atropine in them. He also said it was unreasonable that anything contained in Dr. Sibley's prescription would produce appellee's widely dilated pupils.

Dr. Krigsten had been appellee's physician at least part of the time for seven or eight years. After seeing Dr. Sibley, appellee consulted Dr. Krigsten on the 27th. He examined appellee and found him highly nervous, pupils dilated; complained of extreme dryness of throat, his voice hoarse and husky; and suffering from dizziness. Dr. Krigsten saw appellee every third to sixth day for the remainder of the summer. He testified that appellee was probably suffering from atropine poisoning and that his symptoms could probably not be caused by the medicine which Dr. Sibley prescribed.

Dr. Watkin testified, in response to a long hypothetical question, that the symptoms shown by appellee were probably not due to any of the prescribed drugs, specifically or in combination.

Both appellee and his wife testified that appellee had not previously suffered from similar symptoms.

Appellant's pharmacist, Johnson, who filled the prescription, testified they had on hand at the time atropine dispensing

tablets which were used "more or less" in prescriptions; that druggists now use such tablets rather than old-fashioned powders in filling prescriptions. He also testified that arsenic and strychnine and atropine, if they had atropine, would be kept together in different bottles in the same compartment, although this was denied by Mr. Toller and Mr. Bogan. Arsenic acid and strychnine sulphate are two of the five drugs prescribed by Dr. Sibley as ingredients of the tablets. At the time in question Johnson was acting as relief pharmacist in the store because Bogan, chief pharmacist and manager, was on vacation. There is also testimony that the bottles and tablets of these three last-named poisonous drugs were similar in size and shape.

Professor Coss, head of the Morningside College chemistry department, testified that he made a chemical analysis of some of the capsules; that Vitali's test was positive for atropine or the atropine group; that there was atropine in the capsules, "even more atropine than you would expect." This witness also performed a biological test by putting a solution from the capsules in one of his eyes. The solution dilated the pupil and indicated the capsules contained atropine or compounds of the atropine group. The professor also said the tests made by him were reliable and approved.

Dean Teeters of the Pharmacy College of Iowa University, a witness for appellant, denied much of Professor Coss's testimony. He testified that he performed Vitali's test (which he said was the best for atropine) upon the contents of three of the capsules and found no atropine. Dean Teeters also said it was impossible "to make a chemical examination that would be absolutely trustworthy" of the combination of prescribed drugs.

Upon cross-examination of Professor Coss it was brought out that hyoscyamine and hyoscine, with atropine, are related drugs of "the atropine group" and that he could not be positive from his tests that the capsules contained atropine rather than hyoscyamine or hyoscine; that these three drugs of the atropine group have the same properties and would have the same effect, although they are separate drugs. This testimony furnishes the principal basis for appellant's claim that appellee failed to prove the capsules contained atropine.

That this argument is somewhat technical is disclosed

by the fact that the chemical formula for hyoscyamine is identical with that for atropine, according to the United States Pharmacopoeia, of which we take judicial notice.

I. We think there was sufficient evidence that the capsules contained atropine. Appellee's medical witnesses testified that appellee, who had taken four of the capsules, showed the characteristic symptoms of atropine poisoning. The jury could have found that, owing to the appearance and location in the prescription counter of the tablets and bottles containing arsenic and strychnine, which were prescribed, and those containing atropine, the latter may have been included. There was no evidence that appellant kept on hand any hyoscyamine or hyoscine, the other two drugs of the atropine group to which witness Coss referred, nor that the capsules in fact contained either drug, but only Coss's admission that either would produce similar results in Vitali's test. Dean Teeters, appellant's expert, did not claim that either of these other two drugs of the atropine group was present in the capsules. Coss's testimony as a whole was that he was strongly of the opinion there was atropine in the capsules, although he conceded he could not be positive from his chemical analysis alone that it might not have been one of the other two related drugs of the atropine group.

It was not necessary for appellee to prove conclusively the presence of atropine in the capsules, nor to exclude to a certainty every other suggested poison. The evidence was such as to make appellant's theory of atropine poisoning reasonably probable—not merely possible—and more probable than any other theory based on such evidence. This is sufficient. Bartholomew v. Butts, 232 Iowa 776, 5 N. W. 2d 7, 11, and authorities cited.

Appellant argues several other matters of evidence. For example, it is emphasized that Dean Teeters testified that Dr. Sibley's prescription was "irrational" and that phenacetin, one of the prescribed drugs, could have accounted for the dilated pupils in appellee's eyes. This testimony was vigorously denied, however. In fact, the case, as we view it, presents principally disputed fact questions which were for the jury.

We are not to be understood from the foregoing as holding that proof that the capsules contained any one of the three re-

lated poisonous drugs of the atropine group would not be sufficient. We do not pass upon that question. Attention is called, however, to sections 11177 and 11181, Code, 1939, and, as having some bearing, Westmoreland v. United States, 155 U. S. 545, 549, 15 S. Ct. 243, 39 L. Ed. 255, where it is said that, while at common law an indictment for murder by poisoning must allege the kind of poison administered, proof of the use of a different poison is an immaterial variance, for the kind of death is the same.

II. Appellant does not argue that there was not sufficient showing of negligence provided it appeared that the capsules contained atropine, admittedly a dangerous poison.

 ＼III. Appellant complains of instruction 7 to the jury, which deals with the weight to be given answers by experts to hypothetical questions. It is claimed the instruction permitted the jury to determine the materiality of facts which the questions assumed to be true, contrary to our holdings in Lemon v. Kessel, 202 Iowa 273, 281, 209 N. W. 393; Wilcox v. Crumpton, 219 Iowa 389, 397, 258 N. W. 704, and cases cited. The rule is that answers to hypothetical questions should be disregarded if the facts assumed have not been proven, and juries are not permitted to pass upon the materiality of such facts. Low v. Ford Hopkins Co., 231 Iowa 251, 256, 1 N. W. 2d 95, 98. However, since neither the exceptions to instructions nor the motion for new trial raised the question now urged, we will not consider it. Section 11495, Code, 1939; Clark v. Berry Seed Co., 225 Iowa 262, 272, 280 N. W. 505; Gorham v. Richard, 223 Iowa 364, 368, 272 N. W. 512; Kaufman v. Borg, 214 Iowa 293, 296, 242 N. W. 104.

 IV. Appellee asked a medical witness, "May there be permanent effects of atropine poisoning even though no organic trouble can be demonstrated?" Appellant's objection was overruled and the witness answered, "It is possible." The court overruled appellant's motion to strike the answer as not responsive and speculative. Refusal to strike the answer is assigned as error. The ruling was proper.

 We have repeatedly held that the fact the answer is not responsive can be taken advantage of only by the party exam-

ining the witness. In re Will of Jahn, 184 Iowa 416, 422, 165 N. W. 1021, and cases cited. The question was clearly proper. For a full discussion of examination of experts, see Grismore v. Consolidated Prod. Co., 232 Iowa 328, 5 N. W. 2d 646. While an expert may not express a mere guess or conjecture, he may testify to what might have been the cause of a certain result. 32 C. J. S. 220, 221, section 522. An opinion as to what was the possible cause of a given result is not too uncertain. 20 Am. Jur. 733, section 869. And see the Grismore case, supra. This is especially true here in view of other testimony of this same witness of which appellant does not complain. He testified more than once that there may be permanent effects of atropine poisoning.

Furthermore, the court withdrew from the jury all claim of permanent injury.

V. Appellant complains of that part of instruction 8 which permitted recovery for any pain and suffering "that it is reasonably certain he [appellee] will endure in the future." Appellant's thought seems to be that, because the claim of permanent injury was withdrawn, there could be no recovery for future pain and suffering. This does not follow. Worez v. Des Moines City R. Co., 175 Iowa 1, 25, 156 N. W. 867; Achey v. City of Marion, 126 Iowa 47, 50, 101 N. W. 435; Fry v. Dubuque & S. W. Ry. Co., 45 Iowa 416; Annotation, 81 A. L. R. 423, 435.

Appellee's petition sought recovery for future pain and suffering. There was substantial testimony, both nonexpert and expert, that appellee had suffered from the effects of the poison down to the time of trial. At least two physicians, one of whom was his own doctor, Krigsten, testified appellee would probably continue so to suffer in the future and that his condition would be permanent. That the evidence was sufficient to warrant recovery for future pain and suffering, see Danner v. Cooper, 215 Iowa 1354, 1364, 246 N. W. 223, and cases cited; Jordan v. Cedar Rapids & Marion City Ry. Co., 124 Iowa 177, 182, 99 N. W. 693; Buce v. Incorporated Town, 122 Iowa 92, 93, 97 N. W. 989. For a discussion of instructions on this subject, see Annotation, 85 A. L. R. 1010, 1028.

VI. Appellee propounded a long hypothetical question to Dr. Sibley and Dr. Krigsten in which one of the assumed facts was that the "Vitali test, as made by Professor Coss, was positive

for atropine and compounds of the atropine group.'' Appellant made a long objection to the question, pointing out minutely wherein it was improper. The doctors were permitted to answer. The rulings are assigned as error. The principal contention here is that the answers were improperly based in part upon the opinion of Professor Coss, another expert witness.

The particular complaint now relied upon was not made in the long objection to the question, nor otherwise, in the court below, although the quoted portion of the question was objected to for other reasons. Aside from this, however, the contention cannot be sustained. While it is true that the opinion of an expert should not be based upon *the opinion* of another expert witness, *facts* testified to by another expert may properly be included in a hypothetical question. 32 C. J. S. 347, 356, section 551. This is recognized in Hunder v. Rindlaub, 61 N. D. 389, 237 N. W. 915, 925, upon which appellant relies. The quoted portion of the question referred to a fact and not an opinion and therefore was proper. Ivanesovich v. North American Life & Cas. Co., 145 Minn. 175, 176 N. W. 502, 504.

VII. Finally, it is contended the verdict for $2,650 is excessive. No claim is made of passion and prejudice. There is evidence that appellee lost approximately 50 days from his work, for which he would have been paid nearly $600. It is questionable, however, that all of this time was lost because of effects of the atropine. Appellee incurred expense of $50 for medical services. The jury could have found that appellee endured much suffering, both physical and mental, down to the time of trial, and that it is reasonably certain he will continue to suffer an indefinite time in the future. The trial court approved the verdict and we are not prepared to hold it is so large as to shock the conscience. See Remer v. Takin Bros., 230 Iowa 290, 294, 297 N. W. 297, and cases cited.

VIII. Some other contentions are made. They are without merit.

Appellant's motion to strike appellee's brief and argument is overruled.

The judgment is—Affirmed.

WENNERSTRUM, C. J., and MITCHELL, STIGER, SAGER, BLISS, HALE, and MILLER, JJ., concur.