EFFIE L. BURK, Contestant, Appellant, v. DAVID A. REESE
and J. E. SWITZER, Proponents, Appellees.

**Expert Evidence:** HYPOTHETICAL QUESTIONS: INSTRUCTIONS. The jury
should not be permitted by an instruction to determine for itself
what facts embodied in a hypothetical question are of so little im-
portance that failure to establish them by the evidence may be
disregarded, and the answer of the witness still be given weight
and consideration in reaching a verdict: Unless the entire series
of assumed facts embraced in the hypothetical question are found
to be true the answer of the witness should be disregarded.

**Evidence:** SCOPE OF CROSS-EXAMINATION: WILL CONTEST. The court
should not permit a course of cross-examination of the witnesses
of a party having the burden of an issue, by which the other
party injects his evidence in chief into the case before the proper
time, thus putting his opponents at a disadvantage; as where the
contestant of a will asked a hypothetical question in answer to
which the witness gave it as his opinion that testator was of un-
sound mind, it was improper to permit proponent's counsel on
cross-examination to frame a like question by an array of as-
sumed facts and circumstances, for which no foundation had
been laid, clearly indicating mental unsoundness, and, based there-
on, secure a favorable answer. The general rule allowing the
court a discretion as to the order of introduction of evidence does
not go to this extent.

*Appeal from Johnson District Court.*—HON. D. V. JACK-
SON, Judge.

FRIDAY, JULY 2, 1909.

PROCEEDINGS for the probate of the will of John R.
Heath, deceased. Judgment admitting the will to probate,
and the contestant appeals.—*Reversed.*

*Milton Remley,* for appellant.

*Wade, Dutcher & Davis,* for appellees.

Weaver, J.—John R. Heath died in Johnson County June 24, 1905, possessed of an estate of nearly or quite $100,000. On December 29, 1904, he executed a paper purporting to be his will, to which instrument was added a codicil February 3, 1905. By this writing he devised his entire estate to trustees, who were directed to pay the income to the daughter during her life, together with such other sums from the principal as might be necessary to secure her comfortable support. They were also directed to turn over to the daughter one-half of the principal estate in the event of her becoming a widow, and at her death all the rest and remainder thereof was to become the property of her child or children in their own right. This instrument being filed for probate, the daughter, plaintiff herein, who was the only child and heir of the testator, appeared and objected thereto on the ground of his alleged mental incapacity to make a valid disposition of his estate, and that the will as made was the product of an insane delusion on his part with respect to the plaintiff's husband. The cause was tried to a jury, which returned a verdict sustaining the will. The abstracts are very voluminous, aggregating nearly five hundred printed pages of record. The issues were hotly contested, and, as is not unusual in litigation of this nature, there is an irreconciliable conflict in the memory and opinion of witnesses having apparently equal opportunity to know whereof they speak. According to some the testator was so far gone in mental decay as to make quite certain the want of testamentary capacity, while others picture him as retaining his faculties in substantially normal vigor and fully capable of making a valid will. Under such circumstances we need not attempt a statement of the testimony. It is sufficient for present purposes that there was a conflict of evidence calling for its submission to the jury, and

the verdict returned is to be accepted as final, unless there be found reversible error in the rulings of the trial court or instructions to the jury. Of the exceptions which have been argued in this respect we shall discuss only those we deem decisive of the appeal.

I. Both sides placed much reliance upon the testimony of experts, and the submission of this testimony under appropriate rules of law was a matter of very material importance. In this connection the court instructed the jury as follows:

*1. EXPERT EVIDENCE: hypothetical questions: instructions.*

(17) There have also been introduced in evidence opinions of physicians or experts in mental diseases based upon hypothetical questions or an assumed state of facts. Such opinions must be considered and weighed by you in view of the facts upon which they are based as stated in the hypothetical question to which answer is given, which facts are assumed to be true by the witnesses in formulating their answers. Should such assumed facts not be supported by the evidence, or should it turn out that such hypothetical questions are in important particulars incorrect, unfair, partial and untrue, no weight whatever can be given to the opinion founded thereon.

We are constrained to hold that, under the settled rule of our own cases, this instruction can not be upheld. It leaves the jury to say for itself what facts embodied in the hypothetical question are of so little importance that a failure to establish them by the evidence may be disregarded and the answer still be allowed weight in reaching a verdict. This we have frequently held to be reversible error. *Hall v. Rankin,* 87 Iowa, 264; *Kirsher v. Kirsher,* 120 Iowa, 342; *Stutsman v. Sharpless,* 125 Iowa, 341; *Madden v. Coal Co.,* 133 Iowa, 704; *Ball v. Skinner,* 134 Iowa, 298. In the last-cited case we said: "A hypothetical question embracing a series of assumed facts is one complete structure, and the court and jury

are required to assume that every component part or element therein is considered by the expert in reaching the opinion he gives in answer thereto. It is not for the court or jury to say that any one of the assumed facts was disregarded or ignored by the witness in forming his opinion, and therefore if in deliberating upon its verdict, the jury finds that one or more of the assumptions indulged in by counsel in framing the question have not been established, the testimony based thereon should be wholly discarded." This quotation fairly summarizes our prior holdings, and as we are not prepared to overrule them, and the instruction under consideration bears directly upon the most vital proposition in the case, we see no way to avoid the conclusion that it requires the granting of a new trial.

II. The examination and cross-examination of the expert witnesses was, to say the least, remarkable. Counsel for contestant formulated a single question for the consideration of his experts containing not less than eight thousand words and embodying the statement of scores of different facts and circumstances which were alleged to have characterized the conduct of the deceased in his later years, and on this hypothesis secured an answer that the deceased was of unsound mind. On cross-examination counsel for proponent formulated another hypothetical question of still more ponderous proportions, embodying other scores of alleged facts, and on this basis secured from the same witnesses an answer that such a person must be entirely sane. This interrogation was objected to by the contestant as not proper cross-examination and as being an effort to inject the proponent's evidence in chief into the case being made by the contestant. The objection was overruled, and the testimony permitted to stand. In our judgment it should have been excluded. At this stage of the trial the contestants still had the floor. None of the proponent's evidence had yet been introduced, and their

*2.* EVIDENCE: scope of cross-examination: will contest.

showing in support of the testator's competency was as yet undisclosed, except as it had been foreshadowed in the opening statement of counsel. Yet under the guise of cross-examination they were permitted to mass a great array of assumed facts and circumstances clearly indicating the mental soundness of the deceased, and thereon obtained answers not necessarily inconsistent with the testimony on direct examination, but, by obtaining it before any foundation had been laid therefor and sandwiching it into the case of their opponent, put the latter to an unjust disadvantage. The question which the witnesses had answered upon direct examination was based upon the assumed truths of certain alleged facts which it was claimed the evidence disclosed. The correctness of their deductions and conclusions from such facts it was proper to test by any inquiry fairly tending to weaken the force of their reasoning; but this could not be done by leading them to admit that, upon an altogether different showing of facts not yet proved, the testator would have to be pronounced of sound mind. The party having the burden of an issue is entitled to have an opportunity to make his case as best he can by his own witnesses, subject, of course, to the ordinary rules of evidence and reasonable and proper cross-examination, and this right is seriously abridged when the other party is allowed to interpose its defense prematurely. Our rules of practice give both parties ample opportunity to be heard, and the dignity and good order of judicial procedure can be preserved only by requiring both parties to observe them. The question presented here is not covered by the general rule which allows the trial court discretion in the order of introducing testimony. That rule has its most frequent and illustrative, though not its only, application where the party having the burden has overlooked testimony in presenting his main case and is allowed to introduce it at a later stage of the proceedings; but it has never been held broad enough to permit

the opposing party to go beyond the appropriate limits of cross-examination and introduce new matter pertaining solely to his defense. If he proposes to depend upon the same experts used by his antagonists, or desires to use their testimony in support of his defense, he should "wait his turn" to which in the regular course of trial practice he is entitled.

III. Of the questions argued involving the competency of witnesses and other matters likely to arise upon a second trial, we may say the rulings of the trial court appear to be without substantial error. We think, however, it is proper to remark that we are less reluctant to order a new trial because of the conviction forced upon us by a reading of the record that the extraordinary bitterness and wrangling attendant upon the trial may well have clouded the minds of the jurors and interfered with that fairness and fullness of consideration which are essential to the integrity of verdicts. The trial court appears to have presided with marked impartiality and to have exerted itself to the utmost to keep the proceedings within proper limits. Counsel upon both sides are veterans in the practice and of such well-earned eminence as men and lawyers as forbids any suspicion of the integrity of their intentions or motives, and we can only account for the conditions here presented on the theory that the trial happened to occur in a period of prevailing east winds surcharging the local atmosphere with subtle influences tending to asperity of temper. It is unnecessary to particularize or to center the responsibility upon any individual, where neither appears to have tried the efficacy of Solomon's prescription for turning away wrath. It is enough to say that there was an indulgence in reflections upon opposing counsel and upon the integrity of witnesses, statements of irrelevant facts, uncalled for remarks presumably having some local significance which might appeal to the minds of the jurors, and other similar manifestations which should not char-

acterize orderly proceedings in a court of justice. We have no doubt they will be carefully avoided upon the retrial of the case. In saying these things we are not to be understood as administering censure upon counsel. So long as lawyers remain men, and men remain human, the tendency to heat and excess in stubbornly contested jury trials can never be wholly eradicated. In no class of litigation is this more true than in will contests, but it is none the less important that in these, as in all other cases, the fighting qualities of the advocate do not escape the restraint of his judgment.

For the reasons hereinbefore stated, the judgment of the district court is *reversed*.