ALBERT A. BRACKEY and others, Appellees, v. TALLACK
    A. BRACKEY and others, Appellants.

**Wills:** UNDUE INFLUENCE. The mere fact that a will may have been
made at the request and solicitation of the beneficiary, and but
for such request and solicitation would not have been made, will
not render it void on the ground of undue influence, but the
undue influence to vitiate a will must be of such character and
effect as to subject the will of the testator to that of the person
exercising it; it must be equivalent to moral coercion and must
have been exercised at the very time the will was executed.

**Same:** EVIDENCE. Undue influence may be shown by collateral facts
and circumstances, but the circumstances relied upon for that
purpose will not be sufficient if they are equally consistent with
the theory of good faith.
  In this case the evidence is held insufficient to establish undue
influence.

**Evidence:** SCOPE OF CROSS EXAMINATION : DISCRETION. The extent of
cross examination is a matter largely within the control of the
trial court, and .a clear case of abuse of discretion must be made
to justify a reversal of the case on that ground.

*Appeal from Winnebago District Court.*—HON. J. J.
            CLARK, Judge.

WEDNESDAY, MARCH 15, 1911.

THE will of Alv Tallack Brackey, deceased, having
been presented for probate, its admission was contested
by the defendants on the ground of mental incapacity of
the testator, and of undue influence exercised over him
by the proponent, Albert A. Brackey. At the close of the
evidence the court withdrew from the jury the question
of alleged undue influence, and submitted the case upon

the question of mental incapacity only. A verdict was returned sustaining the validity of the will, and the contestants appeal. *Affirmed.*

*Oliver Gordon, H. A. Brown* and *H. H. Dorland,* for appellants.

*Senneff & Bliss,* for appellees.

WEAVER, J.—The testator died April 9, 1909, at the age of seventy-seven years. His will bears date May 4, 1908. By its terms he devised a farm of one hundred and sixty acres, the largest item of his estate, to the proponent, Albert A. Brackey, for life, with remainder over to Albert's children. The residue of the estate is given to the children of the testator in equal shares.

I. The first question presented for our consideration is the alleged error of the trial court in withdrawing the objection of undue influence from the jury. This depends,

1. WILLS: undue influence.

of course, upon the inquiry whether, under all the evidence, a verdict for the contestants upon this issue could have been properly upheld by the court. A careful reading of the evidence leads us to the conclusion that the ruling must be sustained. "Undue influence" has been frequently defined by this and other courts, but its essential meaning is not infrequently misunderstood. It is often urged upon courts, especially in will cases, that opportunity to exercise influence over the testator, the interest of a favored heir in securing more than his equal share in the estate, his close association with the deceased in the later years of his life, and other circumstances which are consistent with a wrongful purpose to obtain and exercise control over him in the making of his will, but are equally consistent with good faith and honesty of purpose, make a case on which a contestant is entitled to go to the jury. But such is not the rule. To

make a jury question, the testimony must go farther.  It may be true that a will has been made at the request and solicitation of the beneficiary, and that but for such request or solicitation it would not have been made, but this is not enough to render it void.  *Chambers v. Brady,* 100 Iowa, 622; *Townsend v. Townsend,* 128 Iowa, 621; *Perkins v. Perkins,* 116 Iowa, 261.  To be "undue" and thereby to vitiate a testamentary disposition of property, the influence must be of such character and effect as to "subject" the will of the testator to that of the person exercising it, and make the paper express the purpose of such person, rather than that of the testator himself.  It must be equivalent to moral coercion.  See *Perkins v. Perkins, supra,* and authorities there cited.  And that influence must have been the controlling force inducing the will at the very time it was executed.  Not that the person charged with exercising such influence must, have been personally present, commanding or coercing such act; but the influence must have been actually operative in inducing it.  *Gates v. Cole,* 137 Iowa, 617; *Townsend v. Townsend,* 128 Iowa, 621.

Not that it is necessary that undue influence be shown by direct evidence, for more often than otherwise it must be established, if at all, by collateral facts and circumstances; but the circumstances relied upon for that purpose will not be sufficient if, upon a fair review of the whole case, they are equally consistent with the theory of good faith.  There is no testimony in the record that the son Albert ever requested or urged his father to make this will, or in any manner suggested or dictated its provisions.  On the contrary, it indirectly, though not very clearly, appears that a short time before his father's death Albert, having become aware of the nature of the will, was not satisfied with it, and, a lawyer and witnesses being called for the purpose of writing another will or a codicil, the testator refused to make

2. SAME: evidence.

any change, saying, "Let it be as it is." The circumstance does not serve to strengthen contestant's claim, as counsel argue, but rather to confirm the conclusion that the will was the voluntary act of the testator.

Much of the evidence offered by contestants relates to incidents where it is said that Albert assaulted his father or treated him in a rough, brutal and unfeeling manner, and that the latter at times seemed to be in fear of him, or at least yield to him. It is to be conceded that, if witnesses tell the truth, filial duty and respect are not among the virtues of the proponent's character, but it appears that both father and son were intemperate drinkers; the former, perhaps, indulging in greater excess. Members of the family of both sexes were profane, uncouth in manner, and little given to gentle words or deeds; and while the testimony concerning the attitude of the proponent towards his father gives proof of his lack of refinement and decent regard for the proprieties of life, it affords us no aid in determining whether he exercised any dominating influence over the making of the will. On the contrary, the evidence discloses that the testator himself, and alone, stated the terms of the will to the attorney who prepared it, and exhibited no signs of mental weakness, or that he was merely registering the will of another and stronger mind. Something like fifty witnesses were examined, many of them persons who knew the testator intimately and had observed his conduct, appearance, and language in the closing years of his life, and we find nothing in their testimony to indicate that the old gentleman did not in the management of his affairs exercise the liberty and independence of the average man of his years. One or more of the children say that in the testator's last sickness Albert showed a disposition to drive them away from the premises and deprive them of the privilege of visiting their father. That such conduct was inspired by any desire to control the disposition of the estate is a

matter of mere conjecture. Indeed, at that time the will had already been made. The fact itself is not enough to prove undue influence, and there is an absence of collateral facts giving it any material weight or consequence. Without pursuing the subject farther, it is sufficient to say there was no error in withdrawing this issue from the jury.

II. Of the issue of unsoundness of mind there is little room for discussion. It is a question of fact which has been submitted to a jury, and on which a verdict has been returned in the proponent's favor.

3. EVIDENCE: scope of cross examination: discretion.

There is evidence to sustain the finding, and it can not be set aside as being without support in the record. Nor do we discover any reversible error in the rulings on evidence. Appellant makes the point that a hypothetical question asked by proponent on cross-examination of the contestant's expert witness was objectionable under the rule applied in *Burk v. Reese,* 143 Iowa, 496, and the answer should have been excluded. The cases are easily distinguishable. There the proponents had not offered any affirmative evidence when they thrust their own expert testimony into the contestant's case, under the guise of cross-examination, and, in view of the somewhat unusual features of the record and of the fact that other reversible error appeared, we took occasion to condemn the practice, and we still adhere to the position there taken. In the case at bar the proponent had assumed the burden at the outset and offered affirmative testimony of the testator's mental soundness, and we think counsel did not abuse the privilege of cross-examination of the witness referred to. It is a common and most effective method of testing the value of an expert's opinion and getting at the truth. The extent of the cross-examination is so largely within the control of the trial court that a clear case of abuse of discretion should be made to justify a reversal thereon. Certain nonexpert witnesses were asked to give their opinion as to the mental soundness of the testator

during the last year of his life, and their answers were excluded on the ground that the witnesses were not asked to speak from facts and circumstances narrated by them. There seems to have been no attempt to conform the interrogatories to the familiar rule in this respect, and we think the exceptions can not be sustained.

The record as a whole reveals nothing which would justify the setting aside of the verdict, and the judgment appealed from is therefore *affirmed*.