## ALMOND v. NUGENT.

1. **Physicians:** LIABILITY OF. The rule laid down in the preceding case of *Smothers* v. *Hanks*, respecting the liability of physicians and surgeons in the treatment of their patients, followed in the present one.

2. —— The civil responsibility of physicians and surgeons in the treatment of their patients is not governed by the same rules of law that apply to mechanics and artisans in the execution of their work.

*Appeal from Adams District Court.*

FRIDAY, JUNE 21.

THIS action was brought against W. R. Nugent and M. D. Sherrick, who were partners in the practice of medicine and surgery. The plaintiff claimed to recover for alleged want of skill, care and diligence on the part of defendants, who were called by him to treat a compound oblique fracture of both bones of his right leg, between the ankle and knee. The defendant Sherrick died, and the action was tried to a jury as against Nugent alone. There was a verdict and judgment for plaintiff for $2,000. The defendant appeals.

*Stuart Brothers* and *C. E. Millard* for the appellant.

*Phillips & Phillips* for the appellee.

COLE, J. — The court gave to the jury the following instructions, asked by the plaintiff, to wit: "1. That the general principles of law defining the civil responsibilities of physicians and surgeons are the same as those that apply to and govern the conduct of lawyers, engineers, mechanics, ship-builders, brokers and other classes of men whose

Almond v. Nugent.

employment requires them to transact business requiring special skill and knowledge.

" 2. The implied contract of the physician and surgeon is, that he possesses and will employ in the treatment of the case, such reasonable skill and diligence as are ordinarily exercised in his profession by thoroughly educated physicians and surgeons ; and in judging of the degree of skill required, regard is to be had to the advanced state of the profession at the time of treatment.

" 3. The standard of ordinary skill in the profession is on the advance, and he who would not be found wanting must apply himself with diligence to the most accredited sources of knowledge. He is bound to be up to the improvements of the day, for the patient is entitled to the benefit of these increased lights. The law has no allowance for quackery. It demands qualifications in the profession. He is bound to exercise his art or profession rightly and truly as he ought; for less than this he will be liable in damages to the injured party." Each of these instructions was duly excepted to, and the giving of them is now assigned as error.

In the case of *Smothers* v. *Hanks, ante,* page 286, we had occasion to determine the correct legal standard of the skill, care and diligence required of physicians, surgeons, etc. That standard is the reasonable skill, care and diligence ordinarily exercised by the members of the profession at the time of the treatment in question, having regard to the advanced state of the profession at the time. The idea is, that degree of skill and diligence which ordinarily characterizes the profession as a whole, or generally; and not that of any particular class or portion of the profession. In that case also we reviewed the case of *McCandless* v. *McWha,* 22 Penn. St. 261, upon Judge Woodward's opinion, from which much of the language of each of the foregoing instructions was taken. We found that it was directly decided in that case that the general principles of

law defining the civil responsibilities of physicians were not the same as apply to engineers, mechanics and ship-builders. And we also found that it was not there *decided* that the skill and diligence required of physicians and surgeons was that ordinarily exercised by thoroughly educated members of that profession; and it may be further remarked that the closing sentence of the third instruction was also taken from the same opinion, and repeats the error of that learned judge who applies the pithy saying of Fitzherbert, that "it is the duty of every artificer to exercise his art rightly and truly as he ought," to *professional* men as well as *artificers*, the very error into which the *nisi prius* court had fallen, and for which its judgment was, by the same opinion, reversed. There was error, therefore, in each of the instructions above set out.

On the trial, the court admitted evidence of the declarations of the partner Sherrick, who was then deceased. It is unnecessary to review the several questions and answers, *seriatim*. Only those declarations were competent, which were made by the partner while engaged in, or which were connected with, the business of the partnership. Upon the subject of exemplary damages, we need only remark, that we see nothing in the case, as now presented, justifying such damages, or showing that the jury allowed such.

Reversed.

BECK, Ch. J. (concurring.) — I concur in holding that the judgment of the district court in this case must be reversed on the ground of erroneous instructions given to the jury. The majority of the court base their conclusion upon the doctrines of *Smothers* v. *Hanks*. As I do not concur in the opinion filed in that case it becomes necessary for me to express briefly the grounds of my conclusion in this.

In my view the law is not correctly presented in the instructions quoted in the majority opinion. The first one

Almond v. Nugent.

is clearly objectionable in holding the civil responsibility of the surgeon to be governed by the same rules of law as those that apply to mechanics and to others engaged in some of the other pursuits mentioned. As a general rule, mechanics are answerable for results, and the real test of their skill is the success of their work. Not so with the surgeon and physician. They are required to exercise due skill, but are not responsible if the desired result fails. The skillful mechanic will always be successful. The materials which he undertakes to shape and fashion are subject to known laws, and are completely under his control. The surgeon and physician apply their skill to human bodies which are subject to laws, both physical and mental, almost infinite in number — many uncertain and many unknown. The diseases which they combat are not under the full dominion of human skill and wisdom. They are not expected to resist and avert the approach of death which ultimately destroys all. The law requires them to apply proper remedies, and excuses them if these fail. *McCandless* v. *McWha*, 22 Penn. St. 261; *Gallager and Wife* v. *Thompson*, Wright (Ohio), 466.

II. The third instruction above quoted is equally objectionable. The thought that the physician and surgeon are required to keep up with the progress of the day in their respective professions, which is expressed in the instructions, accords with my views in *Smothers* v. *Hanks*, *ante*. The language here used, while strong, is not beyond the doctrine of that case. But the rule announced that the practitioner must apply himself to the "most accredited sources of knowledge," imposes a requirement that cannot be admitted. It demands that the surgeon shall be educated by instructors of the most established reputation, that he shall resort to schools of the widest fame, and study books of the first authority. To these sources of knowledge he must continue to apply himself. The rule condemns all knowledge not acquired in this way, and fixes, as

a standard of ordinary skill, attainments gained from the prescribed course of preparation for the discharge of pro-fessional duties. It is not supported by reason and the experience of every day. Humble and unknown instructors of obscure schools may be sources from which the professional man may gain thorough knowledge of the principles of his profession. Diligent application to his pursuit, and attention to the proper sources whence he may gain knowledge of improvements and discoveries of the day, will enable him to build upon the foundation thus laid, a professional structure of excellence. Instances are within the observation of all, where men, eminent for attainments and usefulness in the profession, have been deprived of the advantages of instruction in the schools. The law requires skill and makes no inquiry as to the source whence it is obtained.

The last sentence of the instruction under consideration is, if possible, more faulty. It holds the surgeon liable in damage if he fails " to exercise his art or profession rightly and truly as he ought." Here absolute accuracy and certainty is demanded. No allowance is made for a failure to administer the proper remedy in cases where the highest skill will leave the professional man in doubt at the time he is required to act. As we have before remarked, many laws of nature, applicable to the administration of remedies for the diseases of the human body, are not fully understood ; many are unknown. In obedience to an occult law an approved remedy may fail. Symptomatic indications often refuse to inform the surgeon or physician of the real disease which his skill is called upon to combat, and an autopsy reveals, too late, conditions of the organs of the patient, that could have been discovered in no other way, which demanded a different course of treatment. As it is impossible for the surgeon or physician, possessing even the highest degree of skill, always to act " rightly and truly as he ought," the practitioner should not be held liable

if, in the faithful and honest exercise of ordinary skill, which is only demanded, he fails to use the right remedy. *McCandless* v. *McWha*, 22 Penn. St. 261; *Gallager and Wife* v. *Thompson*, Wright (Ohio), 466; *Reynolds* v. *Groves*, 3 Wis. 416; *Patten* v. *Wiggin*, 51 Me. 594; *Howard* v. *Grover*, 28 id. 97; *Richey* v. *West*, 23 Ill. 385; *Simonds* v. *Henry*, 39 Me. 155; *Landon* v. *Humprey*, 9 Conn. 210.

The instructions, in my opinion, erect a standard of education, attainments and skill, far too high, and impose upon the profession responsibility for mistakes and errors which are beyond the powers of human wisdom and skill to avoid. They cannot be sustained either upon principle or authority.

Other instructions were given by the court, upon its own motion (those above quoted having been given upon request of plaintiff's counsel), which really announce rules not in conflict with the doctrines I have above presented, and which are at war with the instructions we have just considered. In my opinion, the disagreement in the instructions given by the court is so great as to warrant us in the conclusion that the jury thereby were confused and misguided. Under such circumstances the verdict should not stand. *Hoben* v. *B. & M. R. Co.*, 20 Iowa, 562; *Price* v. *Mahony*, 24 id. 582; *Davis, Sawyer & Co.* v. *Strohm*, 17 id. 421.

In my opinion, the instructions last given are not so explicit and direct in their terms as to cure the error in those we have above quoted, neither can we presume that the jury were guided by the first to the exclusion of the others.

For the foregoing reasons I concur in the reversal of the judgment of the court below.

Reversed.