CHARLES PECK, Guardian of ANNA PECK, Appellee, v.
WOODS HUTCHINSON, Appellant.

1. **Appeal:** ADDITIONAL ABSTRACT: WHEN STRICKEN FROM RECORD.
Where an additional abstract filed by the appellee denies the correct-
ness of the appellant's abstract, but states that it does not undertake
to supply what is omitted therefrom, and the additional abstract is
filled with mere conclusions of counsel as to what the record is, and
assigns no sufficient reason for failing to set out the portion of the
record which is claimed to have been omitted, it will be stricken from
the record upon motion. But an additional abstract filed by the ap-
pellant will not be stricken out because filed too late, where no
prejudice to the appellee by reason of the delay is shown.

2. **Malpractice:** MEDICAL BOOKS AS EVIDENCE: ERROR WITHOUT PREJ-
UDICE. In an action for malpractice in optical surgery, the plaintiff
was allowed to read to the jury from a treatise published in 1880, in
which it was stated that in such operations chloroform should always
be administered as an anæsthetic. But there was evidence tending
to show that in 1886, when the operation in question was performed,
said statement was no longer true, the use of cocaine as a local anæs-
thetic having superseded chloroform as a general anæsthetic in such
cases. *Held*, that, if it was error to allow the book to be read, the
error was cured by the other evidence showing what the more modern
practice was.

3. ———: INJURY NOTWITHSTANDING DILIGENCE: EVIDENCE. In an
action for malpractice in optical surgery, resulting in permanent loss
of sight, it is competent to show that operations in such cases, even
though skillfully conducted, do not generally result in restoring the
sight.

4. ———: EVIDENCE AS TO CAUSE OF DISEASE. In an action for mal-
practice in treating the eye of a minor girl, the evidence showed that
the disease had its origin in a sexual disorder; that such disorder
could be contracted otherwise than by the unchastity of the girl, or
by inheritance from her parents; and that it usually resulted in loss
of sight. Her chastity had not been assailed, nor her parents accused
of having such a disease. *Held*, that it was prejudicial error to allow
her parents to testify in rebuttal that they had never had the clap or
any sexual disease.

5. ———: LIABILITY WHERE SERVICES ARE GRATUITOUS. The law re-
quires the same degree of care of a surgeon when his services are
gratuitous as when he receives compensation therefor, and an instruc-

tion to the contrary in a malpractice case was properly refused, especially where there was no evidence of a contract as to compensation, in which case the law implies a promise to pay what is reasonable.

6. ———: DEGREE OF SKILL REQUIRED: INSTRUCTIONS TO JURY. An instruction in such case that, "physicians and surgeons are required to use ordinary skill and diligence only, the average of that possessed by the profession as a body, and not by the thoroughly educated only, having regard to the improvements and advanced state of the profession at the time of the treatment," *held*, to be a correct statement of the law, and to have been erroneously refused as the substance of it was not embodied in the charge.

7. ———: SPECIAL FINDING AGAINST EVIDENCE: NEW TRIAL. In an action for malpractice alleged to have resulted in the loss of the sight of an eye, the jury returned a special finding, that the sight would have been saved but for the negligent treatment, *held*, that the finding was material as to the measure of damages, and that being unsupported by the evidence, a new trial must be granted.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FRIDAY, MAY 19, 1893.

ACTION for damages arising from alleged malpractice. Trial to a jury. Verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*A. B. Cummins, James C. Hume* and *George E. McCaughan,* for appellant.

*Henry S. Wilcox,* for appellee.

KINNE, J.—The plaintiff, as guardian of Anna Peck, a minor, avers that in 1886 the defendant, who held himself out to the public as a physician and surgeon, especially skilled in the treatment of diseases of the eye, was employed and undertook to treat a diseased eye of Anna Peck; that he negligently resorted to a surgical operation, instead of using proper medical treatment, and, in performing said operation, negligently

used a large knife, instead of an instrument adapted to that purpose; that he negligently and unskillfully undertook a painful operation on said eye without first giving the proper drug to render the patient insensible to pain, and negligently and unskillfully cut a long gash in and about the sight of the eye, and left said gash without proper treatment. He says that, in consequence of all of said negligent and unskillful acts, said Anna Peck, without fault on her part, suffered great pain, and lost the use of her eye; that, but for the said acts, the eye would have recovered. Damages in the sum of five thousand dollars are prayed.

In an amendment to the petition, it is said that the defendant was employed by Dr. H. R. Page, with the knowledge and consent of Charles Peck, the father of said Anna Peck; that no arrangement was made fixing the defendant's compensation, and he has not been paid anything for his services. It is also averred that the pain now exists and will continue.

The defendant admits treating Anna Peck for a diseased eye, and that he performed a surgical operation upon the same, and denies all other allegations in the petition. The defendant also charges that the injury to the plaintiff's ward, if any, resulted from her contributory negligence in carelessly moving her head during the operation, and in that her parents forbade the use of general anæsthetics upon said Anna while she was undergoing said operation.

I. The appellee files what he calls an "aditional abstract." After denying the correctness of the appellant's abstract, it is said: "Appellee does not undertake to supply the evidence and other matters omitted from the said abstract." Some matters are then referred to as having been omitted from the appellant's abstract. The appellant moves to strike the additional abstract, for many reasons, among them that it does not undertake

1. APPEAL: additional abstract: when stricken from record.

to amend the abstract, but is a statement of counsel's deductions and conclusions from the evidence. Rule 18 requires the appellant to serve upon the appellee "a printed copy of so much of the abstract of record as may be necessary to a full understanding of the questions presented for decision." By rule 19, if the appellee is not satisfied with the appellant's abstract, he may file "such further or additional abstract as he shall deem necessary to a full understanding of the questions presented to this court for decision." The general rule is that the appellee should set out what he claims has been omitted. We have said that, when the appellant claims he has furnished an abstract of all the evidence, "we will assume that he has, unless the appellee sets out additional evidence." *Miller v. Wolf*, 63 Iowa, 236; *Quinn v. Insurance Co.*, 80 Iowa, 350. Now, the additional abstract is filled with deductions and conclusions of counsel as to what the record is, which constitute no part of the evidence or record. No sufficient reason is shown for failing to set out the portion of the record which it is claimed was omitted. We have examined the appellant's abstract in the light of the appellee's so-called "additional abstract," and find that many matters stated therein were in fact in the appellant's abstract. The motion is sustained.

The appellee moves to strike out an additional abstract filed by the appellant. The ground of the motion is that the paper was filed too late. There is no showing of prejudice by reason thereof to the appellee. It does not appear that it has delayed the submission of the cause. The motion is overruled. The cause will then be determined upon the appellant's abstract and additional abstract.

II. It seems that in December, 1885, the defendant was called by Dr. Page to examine the eye of Anna Peck. That at this time there was a perforating ulcer of the left cornea, with protrusion of the iris, a small

part of the iris, about the size of a grain of wheat, being outside the cornea, protruding from the eye. The external parts of the eye were watery, irritable and spongy. That the ulceration spoken of was the result of the infection of conjunctivitis and blennorrhea. The defendant did not see the eye again until January 17, 1886. At this time there was greater protrusion in a marked degree, and very little sight in the eye. The defendant then advised the parents that without an operation the eye was absolutely lost; that he could not tell with certainty the result of an operation. It was consented to, and performed the next day. The patient was placed upon a lounge, her hands held, and also her head during the latter part of the operation. Near the end of the operation, and while the final incision was being made, the patient flinched and the knife made a cut across the cornea in a diagonal direction. It is this cut which the plaintiff claims destroyed the eye. Either by reason of the diseased condition of the eye, or by reason of the operation and cut, the sight of the eye was entirely lost.

The diseased condition of the eye, as it existed prior to the operation, was caused by infection of the iris, either gonorrheal or blennorrheal, transmitted from the vagina to the eye. The operation was successful so far as the excising the prolapsed portion of the iris was concerned; but sight was not restored. There is much conflict in the testimony as to whether the defendant used an anæsthetic. The plaintiff claims that he did not. The defendant claims that he was preparing to use chloroform, when the mother of the child forbade its use, whereupon he consulted with his colleague, Dr. Page, as to the propriety of proceeding with the operation, using cocaine or local anæsthetics, and they decided that they could properly proceed using cocaine, which they did. The testimony tends to show that a patient may flinch or jerk in case of such an operation,

even if a general anæsthetic is used. We have stated this much touching the condition of the child, the operation, and surrounding circumstances, in order that a better understanding may be had of the points hereafter discussed.

III. Many errors are assigned. Some of them are purely technical, and without merit. In other cases the error, if any, was clearly not prejudicial. We can consider at length only those assignments which seem to raise questions of controlling importance. Against the objection of the defendant, the plaintiff was permitted to read to the jury from "Wells' Treatise on the Eye" what that writer says as to the operation of "iridectomy." This evidence was objected to as incompetent, immaterial, and because the work was an old edition. The book was published in 1880, and states that chloroform should always be administered. It does not recognize local anæsthetic treatment; in fact, says nothing about it. The operation was performed in 1886, and it is claimed that after 1880, and prior to 1886, great changes had occurred in optical surgery; that, during that time, cocaine, a local anæsthetic, was discovered, and came into use, thus superseding the use of general anaesthetics in such cases. This may be conceded. The evidence, we think, preponderates largely in favor of the claim that in such cases the modern and better practice is to use local anæsthetics. Now, that fact was fully shown to the jury, and from the evidence it appeared that the Wells book antedated the time when local anæsthetics first began to be used in such cases in this country. As the evidence clearly showed what the modern practice was, we can not say that the defendant was prejudiced by the introduction of the book.

*2. MALPRACTICE: medical books as evidence: error without prejudice.*

IV. The defendant asked Dr. Schooler the following question: "What is the general result of

**3. ——: injury notwithstanding diligence: evidence.** perforating ulcer of the cornea produced by gonorrheal blennorrhea?" An objection was sustained to the question, as being incompetent and immaterial. We think the question was both competent and material. If the general result of operations in such cases was not to restore the sight, it would be proper, as tending to show that the sight of Anna Peck's eye would have been lost by reason of the disease, regardless of any negligence in performing the operation. But the doctor afterwards testified that "operations performed for the disease of gonorrheal blennorrhea do not usually result in saving the sight of the eye." There was, therefore, no prejudice to the defendant from the ruling.

V. In rebuttal, the plaintiff and his wife were asked: "Did you ever have clap or any sexual disease?" The questions were objected to as incompetent, irrelevant and immaterial, and the objection overruled. The witnesses

**4. ——: evidence as to cause of disease.**

answered, in substance, that they had not had any such disease. The inquiry was foreign to any issue in the case. It was in every respect improper. The plaintiff testified: "Before she contracted this trouble in the eye, Anna had a discharge from her private parts, which was transferred to her eye." Dr. Polasky, a witness for plaintiff, testified that, when he saw Anna, there was an inflammation in the eye, which proved to be blennorrhea, and that the latter "is contracted from vaginitis or gonorrhœa." There was no attack made on the parents of this girl that called for an inquisition as to whether or not they had been afflicted with the disease mentioned. It was shown, and not disputed, that the disease could have been imparted to the girl without her having had connection with anyone. No one had claimed that she was unchaste, and no one had accused her parents of having such a disease. There

could have been but one purpose in introducing such evidence, to repel the idea that the girl had been afflicted with the disease which the plaintiff and the witnesses had testified she had. It could in no event have aided the jury in arriving at a proper determination of the matters in issue. It can easily be seen that it might work great prejudice to the defendant.

VI.   Exception is taken to the refusal of the court to give the following instruction: "Where the services are rendered as a gratuity, gross negligence or willful negligence or want of skill will alone create a liability; and, if you find that the services of the defendant were rendered to the plaintiff or to his ward gratuitously, you must further find that the negligence or want of skill of the defendant was gross or willful, and unless you so find, you must find for the defendant." The same question was raised by a request to submit an interrogatory to the jury, which was refused. The instruction and the request to submit the interrogatory were properly refused. We can discover no good reason why the degree of care to be used by the physician or surgeon should be less in case his services are gratuitously rendered. But we need not discuss the question. The evidence fails to show any contract touching the services. In the absence of an express contract in such cases, the law implies that the defendant should be compensated for his services. *Pettigrew v. Lewis*, 26 Pac. Rep. (Kan.) 458; 14 Am. and Eng. Encyclopedia of Law, p. 78.

*5. ——: liability where services are gratuitous.*

VII.   It is said that the court erred in refusing the sixth instruction asked by the defendant. It reads: "Physicians and surgeons are required to use ordinary skill and diligence only, the average of that possessed by the profession as a body, and not by the thoroughly educated only, having regard to the improvements and

*6. ——: degree of skill required: instructions to jury.*

advanced state of the profession at the time of the treatment." This instruction should have been given. It is a correct statement of the law. The eleventh instruction given by the court is objectionable, in that it is liable to be understood by the jury as requiring a greater degree of skill and care than that stated in the instruction asked. The instruction given also fails to state to the jury that, in determining what is ordinary skill and care in such a case, regard must be had to the improvements and advanced state of the profession at the time of the operation. *Smothers v. Hanks*, 34 Iowa, 286; *Almond v. Nugent*, 34 Iowa, 300; *Gates v. Fleischer*, 67 Wis. 504, 30 N. W. Rep. 674.

VIII. The following interrogatory was submitted to the jury: "Would the sight of the diseased eye of the said Anna Peck have been saved had the accident complained of not happened?" The jury answered, "Yes."

7. ——: special finding against evidence: new trial.

Now, we think it clearly appears that this finding is not sustained by the evidence. We need not set it out in detail. It is sufficient to say that the evidence shows that the child could see very little with this eye prior to the operation. The ulcer in the eye, it appears, had almost destroyed the sight. There was a possibility, merely, of restoring sight by means of the operation; but the evidence, in any view of it, cannot be said to justify the conclusion reached by the jury, as evidenced by the answer to this interrogatory. The inquiry was a material one. Of necessity, it must have been in a large measure influential with the jury in determining the amount of their verdict. If the sight would not have been restored by the operation in the absence of the accident, it must be conceded that the damages allowed, $2,500, were excessive. When a special finding is not supported by the evidence, and the fact so found is material, though not "necessarily of a determinative character," a new trial must be

granted. *Jeffrey v. Railway Co.*, 51 Iowa, 439; *Heath v. Whitebreast Coal and Mining Co.*, 65 Iowa, 737; *Baldwin v. Railway Co.*, 63 Iowa, 210.

Other errors assigned do not merit serious consideration. We have examined them all, and find no prejudice to the defendant. For the reasons heretofore given, the judgment of the district court must be REVERSED.