CHARLES LEMON, Appellee, v. GEORGE KESSEL et al., Appellants.

**EVIDENCE:** Opinion Evidence—Unallowable Conclusion. A witness, after properly testifying to the line of medical treatment employed on a certain occasion, may not testify that such treatment *was the usual and ordinary practice of the profession at the time and place in question.*

**EVIDENCE: Opinion Evidence—Unallowable Conclusion.** Whether the results of a line of medical treatment which was employed on a named occasion were *satisfactory* is, at the best, an unallowable conclusion.

**PHYSICIANS AND SURGEONS: Negligence—Evidence to Rebut.** On the issue why a reduced oblique fracture of a bone "slipped," evidence is admissible tending to show that in such fractures particles of flesh are liable to gather under the ends of the splintered bones and thus cause a slipping.

**PHYSICIANS AND SURGEONS: Negligence—Evidence.** In an action for malpractice, evidence which is narrative of the physical condition of the patient at a time and place in controversy is necessarily admissible.

**PHYSICIANS AND SURGEONS: Negligence—Usual and Ordinary Treatment—Evidence.** Evidence that certain medical treatment was *not* employed on a patient may very properly be met by evidence that such treatment was *not* the usual and ordinary method of practice at the time and place in question.

**PHYSICIANS AND SURGEONS: Negligence—Joint Action—Evidence.** In a *joint* action against two physicians for malpractice, evidence of negligence on the part of one of the defendants prior to the other defendant's connection with the case is inadmissible.

**PHYSICIANS AND SURGEONS: Negligence—Undue Shortening of Limb—Evidence.** In an action for malpractice wherein it is shown that an injured limb, after treatment, was over *three* inches shorter than the uninjured limb, *held* that improperly formed questions tending to show that the ordinary results of such an injury would be a shortenof *one* or *two* inches were properly excluded.

**PHYSICIANS AND SURGEONS: Negligence—Pain and Suffering—Rebuttal.** In an action for malpractice, evidence of pain and suffering on the part of the patient is, of course, rebuttable.

**PHYSICIANS AND SURGEONS: Negligence—Usual and Ordinary Treatment—Competency of Witness.** A witness, his competency to testify being established, may testify as to what was the usual and ordinary practice at a named time and place among physicians and surgeons in the treatment of a specified injury.

**PHYSICIANS AND SURGEONS: Negligence—New Condition Subsequent to Discharge.** If, after the discharge of a patient, new conditions arise which are not the natural result of the previously existing condition of the patient, the physician must have due notification of such condition and an opportunity to treat it; and the jury must be so instructed, if an instruction is requested. (See Book of Anno., Vol. 1, Sec. 11491, Anno. 85 *et seq.*)

PHYSICIANS AND SURGEONS: Negligence—Damages—Pain Incident
11 to Injury. No recovery may be had, in an action for malpractice, for
    pain (1) incident to an injury or (2) incident to the usual and ordi-
    nary treatment of an injury; and, on request, the court must clearly
    differentiate, in its instructions, between such pain and pain *caused by
    the negligence of the physician.* (See Book of Anno., Vol. 1, Sec.
    11491, Anno. 85 *et seq.*)

TRIAL: Instructions—Hypothetical Questions—Jury Determining Ma-
12 teriality of Facts. An instruction which permits a jury to determine
    the materiality of the facts assumed in a hypothetical question, pre-
    liminary to determining the value of the opinion expressed in the
    answer to the question, is prejudicially erroneous. (See Book of
    Anno., Vol. 1, Sec. 11493, Anno. 118 *et seq.*)

Headnote 1: 22 C. J. p. 680 (Anno.) Headnote 2: 22 C. J. p. 680
(Anno.) Headnote 3: 30 Cyc. p. 1587 (Anno.) Headnote 4: 30 Cyc. p.
1587 (Anno.) Headnote 5: 30 Cyc. p. 1587 (Anno.) Headnote 6: 30
Cyc. p. 1587 (Anno.) Headnote 7: 30 Cyc. p. 1587 (Anno.) Headnote
8: 30 Cyc. p. 1587 (Anno.) Headnote 9: 30 Cyc. p. 1587 (Anno.)
Headnote 10: 30 Cyc. pp. 1580 (Anno.), 1589. Headnote 11: 30 Cyc.
pp. 1590, 1591. Headnote 12: 38 Cyc. p. 1511.

Headnote 1: 21 R. C. L. 405. Headnote 11: 21 R. C. L. 408.

*Appeal from Howard District Court.*—W. J. SPRINGER, Judge.

JUNE 21, 1926.

REHEARING DENIED SEPTEMBER 24, 1926.

Action for damages for malpractice. From a judgment in
favor of plaintiff, on the verdict of the jury, the defendants
appeal.—*Reversed.*

*Dutcher & Hambrecht, McCook & Lyons,* and *C. W. Reed,*
for appellants.

*J. A. Cutting* and *William S. Hart,* for appellee.

ALBERT, J.—On or about August 13, 1918, appellee, who
was a farmer, was injured by the fall of a hay derrick, which
resulted in an oblique fracture of the femur of his right leg, an
alleged injury to his knee, and an alleged fracture of the neck
of the femur. Dr. Jinderlee was immediately called, and took

charge of the patient. He moved him to the hospital at Cresco. Dr. Kessel, one of the appellants, was the chief surgeon of that hospital. On the succeeding day, the appellants, Kessel and Jinderlee, reduced the fracture of the femur, applied splints thereto, and, by the use of weights attached to the foot, carried out what is designated in the record as the "method by extension and counter-extension." His limb was later put in a plaster cast. They took an X-ray picture of the femur, did not discover anything wrong with the hip, and for that reason did not X-ray it. Appellants are charged with negligence in this respect, as well as with negligence in failing to discover the condition of his knee. Generally, they are charged with negligence in the care and treatment of the patient with relation to his injury.

Appellee was released from the hospital in a little less than six weeks from the time he was admitted. Later, it developed that the injured leg was approximately three inches shorter than his left leg, and it was about two years thereafter before he could walk without the aid of a crutch or cane, and then only by the assistance of a shoe so constructed as to add an extension to the limb, to meet the length of the other.

This is a sufficient statement of facts, for the present, and any additional facts deemed necessary will be referred to as the opinion progresses.

Sixty-five errors are assigned, urged, and argued in this appeal, 49 of which refer to the admission or rejection of testimony. After laboriously checking up these assignments of error attacking the testimony, we find that 24 of them refer to instances where questions were asked and objections sustained, but the record further shows that the objection was withdrawn, or that the question had been previously or subsequently fully answered, if not in terms, in substance at least. We regret that we are called upon to review such assignments of error. While the ruling on the objection, when made, was probably erroneous, at the same time, when the matter sought to be proven has been previously or is subsequently admitted, the error originally committed is, of course, without prejudice.

Several other errors are based upon the sustaining of objections to questions in which the witness was asked whether or not the line of treatment used by appellants was the usual and ordi-

1. EVIDENCE:
opinion evidence:
unallowable
conclusion.

nary practice of the profession in Cresco and similar communities, in 1918. This line of questioning was objected to on the ground that it called for a conclusion, and invaded the province of the jury. We have made a pronouncement on this question, in which we held that this form of question was subject to the objection herein made. The rule in this state, as we understand it to be, is that the witness should testify as to what the usual and ordinary line of treatment is, in similar cases, at the place in controversy and like localities; next, show what line and character of treatment was used, but leave the conclusions or deductions to be made therefrom for the jury. In other words, after the witness has shown the line of treatment actually used, and also what the usual, ordinary, and customary line of treatment is in such cases, it is for the jury, and not for the witness, to draw the conclusion. We confess that this is rather narrow, but it is apparently a definite line, and we have so announced the rule in *Van Sickle v. Doolittle*, 184 Iowa 885, at 888. It is, therefore, obvious that the ruling of the court on these objections was correct.

Under objection, witnesses were not permitted to testify that the result of the line of treatment used by appellants was "satisfactory." In one instance, where the witness testified

2. EVIDENCE:
opinion evidence:
unallowable
conclusion.

that the result was "satisfactory," that part of the answer was stricken by the court. Both of these rulings were correct, because the matter stated is wholly a conclusion, and, in fact, is not enlightening. The conception of what is satisfactory rests wholly in the mind of the witness, and gives no light to the jury. The testimony that the result was good or bad is of the same character, and is subject to the same objection.

Testimony was offered by one of the appellants, tending to show that, in a case of oblique fracture, particles of flesh and muscle were likely to obtrude themselves between the fractured

3. PHYSICIANS
AND SURGEONS:
negligence: evi-
dence to rebut.

ends of the bone, and thus cause a slipping. This evidence was rejected, when it should have been admitted. The evidence shows that the bones did slip, and this proposed evidence may have thrown light on the question of why they slipped.

One of the appellants was asked to describe to the jury,

in his own way, appellee's condition when he left the hospital, when the witness last saw him, and what happened to the frac-

**4. PHYSICIANS AND SURGEONS: negligence: evidence.** ture of the neck of the femur before that time, and at the time the X-ray pictures were taken. Objection was made to this, and sustained. It should have been overruled, as there can be no question as to the competency and materiality of this testimony.

Appellee's expert testified that one of the recognized methods of treating such condition as existed in this case is what is known as the "open method." To meet this, appellants sought

**5. PHYSICIANS AND SURGEONS: negligence: usual and ordinary treatment: evidence.** to prove that such "open method" was not the usual and ordinary method of practice in Cresco at the time in controversy. Objection was sustained to this, when it should have been overruled. Appellee injected the "open method" of treatment into the case, and appellants had the right to show that such treatment was not used in the ordinary practice at the place in controversy.

This action is brought against appellants jointly. The prayer of the petition and the verdict of the jury both run against them as joint defendants. As heretofore stated, appel-

**6. PHYSICIANS AND SURGEONS: negligence: joint action: evidence.** lant Kessel had nothing to do with the case until it reached the hospital at Cresco, and, as the claim is against them jointly, any negligence on the part of Jinderlee prior to that time would not be chargeable to them jointly. With this situation, appellee sought to show that there was some negligence in the care of his limb after the accident occurred, and before he reached the hospital. An objection to this line of testimony was rightfully sustained, as it was not a material issue in the case, and could not be a basis for a judgment against the appellants jointly.

The evidence shows that appellee's injured limb was more than three inches shorter than the uninjured one. Appellants sought, by questions, to show that a shortening of one or two

**7. PHYSICIANS AND SURGEONS: negligence: undue shortening of limb: evidence.** inches would be the ordinary result, under such circumstances, but, over objection, were refused this line of testimony. The questions asked did not measure up to the facts in the case, and therefore there was no error in sustaining the objection.

Some of appellee's witnesses testify that, at various times

after being taken to the hospital, appellee made certain com-
plaints of pain and discomfort. Appellants
offered testimony to negative this, but were not
permitted to introduce it. This was error.

8. PHYSICIANS
AND SURGEONS:
negligence: pain
and suffering:
rebuttal.

Appellant Jinderlee was asked:

"What was the usual and ordinary practice among physi-
cians and surgeons in Cresco and similar communities, in the
treatment of a knee such as you found in the
plaintiff at that time?"

9. PHYSICIANS
AND SURGEONS:
negligence:
usual and ordi-
nary treatment:
competency of
witness.

This was objected to, and the objection sus-
tained, when it should have been overruled. The
question follows the usual and ordinary line of questions in mat-
ters of this kind.

Appellants asked the following instruction:

"You are instructed that, if you find from the evidence
that, at the time the plaintiff left the hospital, and at the time
the defendant Jinderlee removed the lower part of the splint
from the plaintiff's leg, that the plaintiff's legs
were substantially the same length, and there
was no substantial deformity therein, and that
thereafter the said leg presented an altogether

10. PHYSICIANS
AND SURGEONS:
negligence: new
condition subse-
quent to dis-
charge.

different appearance, and was in an altogether different condi-
tion, it is the law that, even though no instructions were given to
the patient with respect to calling upon the defendants or
notifying them of the conditions, the plaintiff was required
to exercise such ordinary prudence in reference to reporting
to the doctors as would be expected of a person in his condi-
tion, and the failure on his part to exercise such ordinary pru-
dence and care would prevent him from recovering for any
damages thereafter caused to him by reason of the failure to
treat the plaintiff."

We do not know whether we exactly comprehend the mean-
ing of this instruction, but think that if, after appellee left the
hospital, new conditions arose which were not the natural result
of the previous existing conditions, in order to hold the doctors
for damages for the result of such new conditions due care on the
part of appellee required that he notify the physicians of such
new conditions, and that, if he failed to do so, then they would
not be liable for the damages caused by such new conditions.

As thus construed, the equivalent of this instruction should have been given.

Appellants also asked an instruction stating in substance that, if allowance were to be made for pain and suffering, it was only to apply to the pain and suffering caused by the negligence or unskillfulness of appellants in their treatment, and that no allowance could be made for pain and suffering incident to the condition of the injuries or incident to the treatment exercised with a reasonable degree of care and skill. This was refused, and the only instruction given was one excluding the pain and suffering sustained by appellee prior to the time appellants treated him. The vice of this given instruction is emphasized by another instruction, in which the jury was told that, in measuring the damages, it might take into consideration pain and suffering. It is a well known fact that an injury such as the appellee suffered is bound to be accompanied by pain and suffering. For such pain and suffering as are incident to the injury, of course no recovery can be had. Therefore, the instructions should have limited the consideration of the question of pain and suffering to that caused by the negligence and unskillfulness of the physicians in charge. Having failed to do so, the instructions given are erroneous.

11. PHYSICIANS AND SURGEONS: negligence: damages: pain incident to injury.

Other instructions were asked by appellants, but we feel that they were fairly covered by the instructions given by the court. In the instructions given by the court, Instructions 6 and 7 state that "it is alleged and admitted" that certain conditions existed. Both of these instructions are wrong in this respect, because none of these matters are admitted, but all are specifically denied by appellants.

In Instruction 16 given by the court, the question of the weight of hypothetical questions is considered. This instruction is identical in wording with the instruction set out in *Ingwersen v. Carr & Brannon,* 180 Iowa 988, at page 1005. We need not copy the same here. The same attack is made on the instruction in the case at bar as was made on the instruction in that case, to wit: that it left to the jury the determination of the material facts involved. We have repeatedly and consistently condemned this type of instruction, and we have no disposition to recede

12. TRIAL: instructions: hypothetical questions: jury determining materiality of facts.

from our rule in that respect. See *Hall v. Rankin*, 87 Iowa 261; *Kirsher v. Kirsher*, 120 Iowa 337; *Stutsman v. Sharpless*, 125 Iowa 335; *Ball v. Skinner*, 134 Iowa 298; *Madden v. Saylor Coal Co.*, 133 Iowa 699; and *Stanley v. Taylor*, 160 Iowa 427. The argument of the dissentient in the *Ingwersen* case does not appeal any more strongly to us now than it did to the court at that time. To say that certain facts must be substantially proven or established does not, to our minds, convey the same meaning as to say that the jury may determine what facts are material. In other words, materiality and substantiality are not synonymous.

Some other errors are assigned and discussed, but we do not deem them of materiality, and we think that they are not likely to arise on a retrial of the case; hence they are given no further attention.

The court erred on the matters hereinbefore set out, as in this opinion explained, and the case is—*Reversed*.

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.