Paul Hair, by David Hair, his next friend, Appellant, v. R. M. Sorensen, Appellee.

No. 41503.

April 4, 1933.

J. J. Hess and G. C. Dalton, for appellant.

Dutcher, Walker & Ries and Swan, Martin & Martin, for appellee.

Anderson, J.—Paul Hair, a boy ten years of age, was injured at Cumberland, Iowa, on May 12, 1930, by the collapse of

**1230**

seating supports in a tent show. He sustained a simple transverse or square fracture of the femur at a point two-thirds up from the knee to the hip. The defendant, a practicing physician and surgeon in the town of Cumberland, took charge of the case at the request of the parents of the injured boy. The boy was carried on a board or improvised stretcher to the doctor's office where some attempt was apparently made to reduce the fracture, and, according to testimony of plaintiff's witnesses, the defendant stated that the fracture was reduced and the bones placed in apposition at that time. It was determined that it would be necessary to use an X-ray machine to reduce the fracture, or to determine the exact position of the broken bone. In order to do this it was necessary to transport the boy to Atlantic, which was eighteen miles away, and in order to do this the doctor caused to be constructed out of boards a splint in the nature of a trough in which cotton was placed and the leg laid therein, binding the same to the trough at the top and bottom, the trough extending from the boy's crotch to the ankle. In this situation the boy was transported to Atlantic, and upon his arrival there the X-ray machine was used and disclosed that the bones were not in apposition. The boy was placed in a hospital at Atlantic, and an extension apparatus, consisting of weights and pulleys, was attached to the injured leg in order that the contraction of the muscles might be overcome and the bones placed in apposition. This treatment did not accomplish the desired results and after nine days an attempt was made to reduce the fracture by placing the boy under an anaesthetic. A similar attempt was made two days later, but both were unsuccessful. A Thomas splint was then placed upon the leg. This was also an extension arrangement and was a further attempt to overcome the contraction of the muscles and permit the setting of the bones. Nothing was accomplished by this treatment, and at this juncture, the father becoming dissatisfied with the treatment of the boy at the hospital, removed him from the hospital and from the care of Dr. Sorensen and another doctor, and took him to another hospital and placed him in charge of one Dr. Jones. On June 5th, or four or five days after the boy was placed in charge of Dr. Jones, by the use of certain weights and pulleys, the fracture was reduced by the use of similar extension methods, and the weights and pulleys attached to the leg by Dr. Jones remained thereon until July 1st when they were removed. It appears that the boy suffered

pain and became quite nervous before the fracture was finally reduced.

Dr. Jones was the only expert witness who testified upon the trial. He testified that it is ordinarily impossible to reduce a fracture of this kind without the use of some extension arrangement in order to tire out the muscles and place the bones in apposition, and he expressed the opinion that a reduction of the fracture could not be obtained immediately after the accident, but that if they were able to get the bones in apposition the leg should at once be placed in a permanent splint or on tension and that weights and pulleys were usually and ordinarily used for that purpose. He also testified that there were various kinds of splints and extension apparatus used by various doctors, and did not, at any time, testify that the treatment of the boy's injured leg by Dr. Sorensen, the defendant, was not the ordinary and usual treatment used by ordinary and skillful physicians and surgeons in that territory. The nearest approach to anything of this kind that we are able to find in the record was Dr. Jones' statement that after the bones were placed in apposition the leg should be immobilized by the use of proper splints or extensions to prevent the bones from slipping by reason of the contraction of the muscles, and that if the bones were placed in apposition immediately following the fracture such appliances should have been used to retain them in position; but Dr. Jones also expressed the opinion that the bones were not placed in apposition immediately after the injury.

At the close of the plaintiff's testimony, the substance of which we have detailed above, a motion was made by the defendant to withdraw certain issues and alleged grounds of negligence from the consideration of the jury, and also for a directed verdict. These motions were sustained by the trial court. A verdict was directed for the defendant. And from such rulings the plaintiff has appealed.

The grounds of negligence upon which the appellant relies are:

That in not putting a splint on the broken leg so as to hold the ends of the bone in apposition while the plaintiff was being moved from Cumberland to Atlantic, the defendant was negligent.

That the defendant was negligent in using the appliance in which he placed the plaintiff's leg in removing him from Cumberland to Atlantic, and that such appliance was not fit for such use, and that the broken leg was so negligently placed therein that the broken bone became disconnected.

That the defendant was negligent in keeping the plaintiff under his care from May 12, 1930, to May 30, 1930, in the hospital, without resetting said broken bone.

That the defendant was negligent in putting the plaintiff under ether for excessive periods of time in his attempt to reduce the fracture.

The errors assigned upon which plaintiff seeks a reversal are:

1. That the court erred in directing a verdict for the defendant for the reasons:

(a) The evidence shows defendant did not exercise the average degree of skill and care exercised by members of the profession in the community in which the defendant practiced, and by reason thereof plaintiff was injured and suffered pain and mental agony.

(b) The evidence shows that the defendant was negligent in keeping the plaintiff under his care from May 12, 1930, to May 30, 1930, without resetting the broken bone.

(c) The evidence shows the defendant was negligent in administering ether to plaintiff for excessive periods of time.

(d) The evidence shows that the defendant was negligent in not using proper cast or splints on the broken limb immediately after the injury occurred.

(e) The evidence shows the defendant was negligent in not using a splint, which would immobilize the limb after the bones had been set.

(f) The evidence shows the defendant was negligent in treating the injured limb and in not resetting the bones within a reasonable time.

(g) The evidence shows that the box or splint used while the plaintiff was being removed from Cumberland to Atlantic was not a fit appliance for that purpose and that defendant was negligent in so using such appliance.

2. That the court erred in sustaining the objection to certain questions propounded by the plaintiff to the witness, Dr. C. R. Jones.

Under assignment of error No. 1, we may consider (a), (b), (c), and (f) together. After a very careful reading of the record from the transcript of the evidence, which has been certified to us, it is our conclusion that there is no evidence supporting plaintiff's claims under the assignments of error indicated. There is absolutely no evidence showing that the defendant did not use the average de-

gree of skill and care exercised by members of his profession in the community in which he practiced. There is no evidence that what the defendant did or omitted to do caused the plaintiff to suffer pain, or that the defendant was negligent in not reducing the fracture during the time the plaintiff was under his care, and there is no evidence that the use of ether by the defendant in attempting to reduce the fracture was not a usual, ordinary, and skillful practice in such cases. And no ill results from such use are shown.

The plaintiff strenuously insists under the subheads (d), (e), and (g) that the defendant was negligent in the use of the improvised splint or trough in which the plaintiff was transported from Cumberland to Atlantic, and that such appliance was not a fit appliance for the purpose for which it ws used; but such contention is not supported by the record. Dr. Jones, the only expert witness used by the plaintiff, testified that "the first thing usually and ordinarily done by a physician in treating a fracture of this character is to immobilize it; put it in a splint so the bones can not move around until you get them some place where you can take care of them properly, and to place the limb in as comfortable position as possible. For that purpose a multitude of devices are used by the profession—that is a temporary splint—I wouldn't say that the use of the box or trough made out of six inch boards would be the best practice if it didn't include a part of the body. I think probably it is the usual and ordinary practice used by skilled physicians." The foregoing is the only testimony in the record upon which the plaintiff can base his present complaints. It is apparent that the contentions of the plaintiff here under discussion are without support in the record, and it is also apparent that there was nothing in the record to warrant the submission of these issues to the jury.

We have omitted from the foregoing discussion the contention of the plaintiff that the bones were placed in apposition by the defendant immediately following the injury, and that in view of such fact the splint or trough used in transporting the boy from Cumberland to Atlantic was not a proper apparatus to use for such purpose, for the reason that there is no evidence that it was not a proper apparatus even under such circumstances, and for the further reason that it is not shown that any other or more effective apparatus could have been used under the circumstances.

Under the assignment of error No. 2, the plaintiff insists

that the court erred in sustaining objections to the following questions propounded to Dr. Jones:

"Q. Now when you examined this boy did you find his leg, or the bone in his leg, in the condition that legs, broken as this one was, are usually and customarily in after a treatment extending over eighteen days?"

"Q. Did you find this leg, this boy's leg, in the condition that you would ordinarily and usually find broken limbs after the usual and customary treatment extending over a period of eighteen days?"

"Q. Did you find this leg in the condition you would expect to find a leg after the usual and customary treatment by a physician after a period of eighteen days?"

The question presents itself whether the plaintiff was damaged by the exclusion of this testimony, and whether, if the answers to these questions had been permitted to go into the record, there would have then been sufficient testimony upon which to submit the case to the jury. We think not. Assume that the doctor in answering these questions had said that he did not find the bone in the condition that it should have been in after a treatment extending over eighteen days, could any inference of negligence be drawn from such answer? And would such fact be sufficient to enable the jury to say that because the result obtained was not the usual and customary result, the defendant was negligent? Such answer would add nothing to the record by way of showing negligence or malpractice. It will be noted that the appellant made no attempt to show what he intended to prove by the answers to these questions.

The appellant cites and relies upon the case of Baker v. Langan, 165 Iowa 346, 145 N. W. 513, as sustaining his position at this point. In that case some of the questions to which objections were sustained were similar to the questions here under discussion, but objections were overruled to many other questions which were flagrantly objectionable, and this court held that such rulings constituted error. Many questions were propounded in that case, yet from a careful analysis of the opinion we find nothing that supports plaintiff's contention at this point. There is nothing in that case contrary to the discussion and holding in this opinion. And in that case a bad result was shown to have followed the treatment of the broken limb by the doctor, a permanent injury resulting.

Some of the questions propounded to the witnesses in the cited

case called for a description of the usual and customary method of caring for such an injury, and, of course, such questions should have been permitted to be answered.

In the case at bar there is no evidence of negligence or want of proper treatment of the plaintiff by the defendant, and no inference of negligence can be drawn from the mere fact that the treatment was unsuccessful or failed to produce the best results.

"No inference of negligence or want of skill can be drawn from the result of treatment by a physician or surgeon. Negligence on the part of a physician or surgeon is not presumed, but must be affirmatively proved." 48 C. J. 1142.

This court has held that it is the general rule applied in many cases in this state that the result from the treatments is not, in itself, evidence of negligence or want of skill on the part of the physician or surgeon. Berg v. Willett, 212 Iowa 1109, 232 N. W. 821, 823; Bowman v. Woods, 1 G. Greene 441; Almond v. Nugent, 34 Iowa 300, 11 Am. Rep. 147; Smother v. Hanks, 34 Iowa 286, 11 Am. Rep. 141; Peck v. Hutchinson, 88 Iowa 320, 55 N. W. 511; Whitesell v. Hill, 101 Iowa 629, 70 N. W. 750, 37 L. R. A. 830; Dunbauld v. Thompson, 109 Iowa 199, 80 N. W. 324; Decatur v. Simpson, 115 Iowa 348, 88 N. W. 839; Tomer v. Aiken, 126 Iowa 114, 101 N. W. 769; Van Sickle v. Doolittle, 173 Iowa 727, 155 N. W. 1007; O'Grady v. Cadwallader, 183 Iowa 178, 166 N. W. 755; Furgason v. Bellaire, 197 Iowa 277, 197 N. W. 13; Flanagan v. Smith, 197 Iowa 273, 197 N. W. 49.

This court in the first case cited above speaking through Judge Stevens, states:

"The burden in this case was upon appellant to make out a case of negligence or unskillfulness by the preponderance or greater weight of the evidence. The physician does not, in accepting employment, impliedly guarantee a cure in any case or of any disease. He is bound only to employ that degree of skill ordinarily possessed by practitioners generally under like circumstances in the locality in which he practices his profession. It is, however, one thing to say that an adverse result is not, in itself, evidence of negligence or want of skill on the part of a physician, and another to combine the result with other facts and circumstances in determining the fact question. We think it is and must be the rule that, while the result alone is not, in itself, evidence of negligence, yet same may never-

theless be considered, together with other facts and circumstances disclosed by the evidence in a given case in determining whether or not such result is attributable to negligence or want of skill."

In Evans v. Roberts, 172 Iowa 653, 154 N. W. 923, a case cited by the appellant, the facts disclosed that the defendant, a surgeon, in removing the adenoids of a child, cut off a portion of the tongue; that in performing the operation the instrument used by the surgeon slipped and was pulled from the child's mouth with a violent jerk resulting in cutting off a portion of the tongue; and in that case this court held that proof of such facts had a fair tendency to sustain the charge of negligence and was sufficient to carry that question to the jury.

In the case of Kopecky v. Hasek Brothers, 180 Iowa 45, 162 N. W. 828, another case cited by the appellant in which the facts disclose that an operation by a dentist in drilling and preparing a tooth for a filling, the operator negligently punctured or broke through the wall of the root of the tooth; that there might be no direct evidence that the operator departed from the usual standards of his profession, but that the evidence of the result would justify the jury in finding negligence.

In both of the last cited cases the act of the physician in treating the patient disclosed actual negligence and want of ordinary care and skill. We find no authority in either for plaintiff's contention in the case at bar.

In the case of Thorpe v. Talbott, 197 Iowa 95, 196 N. W. 716, which was an action for damages against a physician for malpractice in setting a broken limb, this court held that the failure of a physician to make and maintain a perfect adjustment of a broken limb creates no presumption of negligence, and in that case the expert witness offered by plaintiff did not criticize anything the defendant did except to express a general opinion that in the ordinary general run of fractures the treatment accorded the plaintiff by the defendant surgeon would not be sufficient to accomplish the desired result. In the case at bar there is no criticism by the expert of the treatment administered to the plaintiff by the defendant, and there is no evidence other than the fact that the fracture was not reduced by the defendant during the time he had the plaintiff under his care, of any negligence or any want of the use of the ordinary skill and care of a physician or surgeon in the community in which the physician was practicing.

In the case of Nelson v. Sandell, 202 Iowa 109, 209 N. W. 440, 443, 46 A. L. R. 1447, this court held that a physician does not impliedly guarantee that his treatment of a patient will be beneficial. He fully performs his duty when he, with due care, applies to his patient that treatment which is generally and ordinarily applied by physicians under like circumstances in the locality in question, and the court say:

"It is not the mere failure to effect a cure that determines the practitioner's liability, and whether he used the skill and care required is, of necessity, to be determined from the expert testimony of those who are competent to say what skill and care ought, according to the ordinary standards of the profession, to be used in a given case. We are clearly of the opinion the plaintiff produced no evidence tending to show that the methods used by Dr. Walsh and the care and attention given by him to appellant, in any material respect fell short of those ordinarily used by practitioners in like localities in treating like injuries."

In Lemon v. Kessel, 202 Iowa 273, 209 N. W. 393, 396, this court used the following language:

"It is a well-known fact that an injury, like the appellee suffered, is bound to be accompanied by pain and suffering. For such pain and suffering as are incident to the injury, of course, no recovery can be had."

In the case at bar a complete recovery finally resulted, and the plaintiff's only claim for damages, as shown by his petition, is for pain, mental anguish, and nervousness; and for such, resulting from his injury, the appellant cannot recover. It follows from what we have said that the trial court did not err in sustaining the appellee's motion for a directed verdict.—Affirmed.

All Justices concur.